BENNY R. MANNING, Appellant, v. WARDEN,
NEVADA STATE PRISON, Respondent.

No. 12487

February 14, 1983                              659 P.2d 847

*Thomas E. Perkins,* State Public Defender, and *Michael K. Powell,* Special Deputy Public Defender, Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills B. Lane,* District Attorney, and *Edward B. Horn,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

This is an appeal from an order denying post-conviction relief to appellant Benny R. Manning. Manning was convicted of forcible rape and committing the infamous crime against nature upon a person under the age of eighteen. We shall consider three issues raised by Manning in this appeal.

### The Jury Instruction on Criminal Intent

Appellant first challenges the giving, over objection, of the following instruction: "Criminal intent can only be proven as a deduction from declarations or acts; when the acts are established, the natural and logical deduction is that the defendant intended to do what he did do."

Manning first contends that the giving of this instruction was a violation of NRS 47.230 which prohibits the judge from directing the jury to find a presumed fact against the accused.

The instruction is not violative of NRS 47.230 first, because it does not concern any of the elements essential to establish either offense, and second, because it is not phrased in mandatory terms.

Manning was convicted of two general intent crimes. The jury was not required to find any specific intent since the requisite mental state is said to be found in the doing of the acts which constitute the offense. *See* Boyd v. State, 572 P.2d 276 (Okla.Crim.App. 1977). In order to convict Manning of forcible rape, the jury was required only to find that Manning had carnal knowledge of a female against her will.[1] In order to convict Manning of the infamous crime against nature upon a person under the age of eighteen, the jury was required to find that Manning had committed an act proscribed by former NRS 201.190, in this case cunnilingus or anal intercourse, upon a person under the age of eighteen.

The instruction in issue explains the concept of *mens rea*, "the absence of accident, inadvertence or casualty—a varying state of mind which is the contrary of an innocent state of mind. . . ."[2]

In telling the jury that criminal intent can only be proven as a deduction from declarations or acts, the court merely restated NRS 193.200, namely that the "[i]ntention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." The second clause of the instruction states that doing an act gives rise to the conclusion that the act was done intentionally.

The instruction reflects common experience. In so doing, it does not command the jury to find anything, but merely reminds the jury that most actions are not the result of mistake or inadvertence. The instruction thus did not violate NRS 47.230. *Cf.* Marshall v. State, 95 Nev. 802, 603 P.2d 283 (1979) (*instruction was erroneous in requiring jury to find that defendant had knowledge and intent to defraud if the jury found that defendant possessed two or more credit cards issued in the name of another*).

Appellant next argues that the giving of the instruction amounted to denial of his due process rights as announced in Sandstrom v. Montana, 442 U.S. 510 (1979). Based on the foregoing analysis, we also reject this contention.[3]

---

[1] Manning was convicted under former NRS 200.363. The current provision is found at NRS 200.366.

[2] 2 J. Wigmore, Evidence § 300 (Chadbourn rev. 1979).

[3] *Sandstrom* was a murder case in which one of the elements of the conviction was the defendant's having "purposely or knowingly," that is, intentionally, caused the victim's death. The trial court had instructed the

We therefore conclude that the trial court did not err in giving its instruction on general criminal intent.[4]

## The Jury Instruction on Consent

We next consider whether the trial court erred by instructing the jury that consent was no defense to a charge of committing the infamous crime against nature. At the time of the alleged offense, NRS 201.190 proscribed both cunnilingus and anal intercourse, two acts which Manning allegedly committed on the complainant. Under the statute, consent was no defense to the charge, regardless of the age of the participants; however, age was an aggravating circumstance to be considered in·determining the appropriate penalty.[5] Manning was convicted and sentenced under that portion of the statute concerning commission of sexual acts upon a person under the age of eighteen.

Manning urges that consent was a legitimate defense to the charge. He argues that since the complainant was seventeen years old, she was of sufficient age to consent to the act. The argument is premised on the fact that former NRS 200.365, in existence at the time of the offense, limited the crime of statutory rape to sexual intercourse committed with a female under

jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." Under Montana law whether the crime was committed purposely or knowingly was a *fact* necessary to the crime charged, deliberate homicide. The Supreme Court held that the challenged instruction had the effect of relieving the state of the burden of proof on a critical fact, thus violating the fourteenth amendment requirement that every element of a crime be proven beyond a reasonable doubt.

[4]*Accord,* McGuinn v. Crist, 657 F.2d 1107 (9th Cir. 1981), *cert. denied,* 455 U.S. 990 (1982), (if the jury is properly instructed concerning the disputed issues in a case, an erroneous instruction regarding intent is harmless so long as the defense does not concern intent.)

[5]Former NRS 201.190, in pertinent part, provided as follows:

201.190 Crime against nature: Punishment; limitations on parole, probation.

1. Except as provided in subsection 2, every person of full age who commits the infamous crime against nature shall be punished:

(a) Where physical force or the immediate threat of such force is used by the defendant to compel another·person to participate in such offense, or where such offense is committed upon the person of one who is under the age of 18 years, by imprisonment in the state prison for life with possibility of parole, eligibility for which begins, unless further restricted by subsection 3, when a minimum of 5 years has been served.

(b) Otherwise, by imprisonment in the state prison for not less than 1 year nor more than 6 years.

2. No person who is compelled by another, through physical force or the immediate threat of such force, to participate in the infamous crime against nature is thereby guilty of any public offense.

the age of sixteen. Manning argues that the same age limit should apply to his alleged offense as well.

We disagree. The age of majority in this state is eighteen. NRS 129.010; *see also* NRS 62.010. The legislature was within its powers in enacting the statutory provisions applicable to appellant since protecting the health and morals of minors is a legitimate state interest. The fact the legislature chose the age of sixteen for consent to sexual intercourse in no way diminishes its authority to determine that all minors should be protected under NRS 201.190.[6]

## *The Reference to Appellant's Prior Criminal Record*

The third alleged error relates to reference by a prosecution witness to Manning's past criminal record. A police officer testified that after receiving a description of the crime from the complainant he had "come to an understanding or an idea of who the suspect might be in this particular case." The detective told the jury that he reached this conclusion when the victim said her assailant was a "young man by the name of Benny or Sid." The detective then testified that "when she mentioned Benny, I knew of Benny Manning myself." The detective further testified that based on his belief that the suspect was Benny Manning, he went to the identification division of the police department to obtain a mug shot. The inference from the detective's testimony is clearly that Manning had been engaged in some prior criminal activity.

Both parties agree that the test for determining a reference to criminal history is whether "a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." Commonwealth v. Allen, 292 A.2d 373, 375 (Pa. 1972). In applying this test, it appears that the jurors could have inferred previous criminal activity from either the reference to the mug shots or from the focus on Benny Manning as a suspect based upon the victim's description and the nature of the charge. The combined effect of the two statements would lead the jury to conclude Manning had a criminal record, probably sexual in nature. *Cf.* Gehrke v. State, 96 Nev. 581, 613 P.2d 1028 (1980) (police officer's testimony concerning previous acquaintance with defendant was as consistent with the inference that the two men were family friends as it was with the inference that the defendant had a prior criminal record); Reese v. State, 95 Nev. 419, 596 P.2d 212 (1979) (reference made to "previous contacts" with a police officer, without

[6]NRS 201.190 has since been amended to exclude acts involving minors. NRS 200.364 now defines statutory sexual seduction and specifies sixteen as the age of consent for sexual intercourse, anal intercourse, cunnilingus or fellatio.

any indication of the nature of the contacts or that the accused had committed any previous crime, a situation much different from the present reference to "mug shots" of appellant being located in criminal record files); Geary v. State, 91 Nev. 784, 544 P.2d 417 (1975) (reference to an "unfortunate confrontation" with a witness, not a police officer, described as "highly unusual" with no reference to details of the meeting or any inference of or reference to a criminal record or criminal event); Founts v. State, 87 Nev. 165, 483 P.2d 654 (1971) (similar to *Geary,* another coincidental reference to an "unfortunate confrontation" with a witness under circumstances described as "highly unusual," with no reference or inference as to the accused's having been engaged in or convicted of previous criminal offenses).

The state concedes that in a majority of jurisdictions improper reference to criminal history is a violation of due process since it affects the presumption of innocence; the reviewing court therefore must determine whether the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967).[7]

Applying the *Chapman* standard to the facts of this case, we conclude, beyond a reasonable doubt, that the error is harmless with regard to the conviction of the infamous crime against nature. There was uncontradicted evidence of oral and anal intercourse involving Manning and the seventeen year old complainant. Since Manning claimed that the victim had consented and since consent was not available as a defense to the crime, there was a clear violation of former NRS 201.190. We hold under such circumstances the improper reference to Manning's criminal history was harmless.

We arrive at a different conclusion concerning the rape conviction. There appears to be no doubt that a variety of sexual activities took place between Manning and the complainant. A reading of the record does, however, reveal some serious questions relative to the forcible nature of the couple's encounter.

The evidence used to convict Manning came primarily from the complainant. She testified that Manning came to her apartment after midnight, apparently seeking marijuana. Manning

---

[7]This court in Porter v. State, 94 Nev. 142, 149, 576 P.2d 275, 279 (1978) commented that "[i]t is without question that . . . [an improper] reference to past criminal history is reversible error." The facts in *Porter* were remarkably close to those in the instant case; the erroneous testimony did not result in reversal, however, since counsel failed to object to the reference.

had on previous occasions smoked marijuana at the apartment with the complainant and her boyfriend. The complainant testified that after Manning entered the apartment, he dragged her upstairs and forced her to participate in various sex acts.

The complainant testified that she had attempted to escape onto a balcony, but was apprehended just as she called for help. Although her neighbors were at home in the next apartment, they did not hear any sounds of a struggle. The complainant testified that upon returning to the bedroom, Manning suggested that the two "compromise" rather than doing it "the hard way." Thereupon they engaged in cunnilingus. Manning subsequently told the woman to choose between anal and vaginal intercourse. Although the complainant indicated a preference for anal sex, Manning alternated instead between anal and vaginal intercourse. When asked by counsel whether she had been forced to have vaginal intercourse, the woman replied, "I guess you would say that."

There are other inconsistencies in the record. The complainant told her neighbor that she immediately went for help after Manning left and that she had neither bathed nor douched. She later testified that she waited approximately thirty minutes before contacting her neighbor and admitted that she had both bathed and douched. The woman also testified that after Manning cleaned up and dressed, he asked her to walk him to the door. He then advised her not to discuss their activities with her boyfriend because it might be "embarrassing." She did, however, tell her boyfriend, who called the police.

The testimony of the detective rather clearly imparts to the jury that Manning had a record of previous criminal assaults. We cannot say that in a rape case no jury would be influenced in some substantial manner by such an impermissible reference. As stated in Porter v. State, 94 Nev. 142, 576 P.2d 279 (1978), "[i]t is without question that absent special conditions of admissibility, reference to past criminal history is reversible error."

The federal constitutional rule which we must follow in these matters require us to conclude beyond a reasonable doubt that reference to Manning's past criminal conduct had no affect on the jury before we can affirm the conviction. Since the record will not permit us to draw this conclusion, we must reverse the conviction for forcible rape and allow to remain in effect the other convictions.

We find all remaining assignments of error to be without merit. The conviction on the infamous crime against nature committed with a person under the age of eighteen is affirmed.

The conviction for forcible rape is reversed and remanded for a new trial.

MOWBRAY and GUNDERSON, JJ., and ZENOFF, SR. J.,[8] concur.

MANOUKIAN, C. J., concurring and dissenting:

I concur with the majority's affirmance of the conviction of the infamous crime against nature. The majority, however, has concluded that the rape conviction is infirm because "[t]he combined effect of the two statements would lead the jury to conclude Manning had a criminal record, probably sexual in nature," which would, in turn, prejudice appellant beyond a reasonable doubt. I disagree that reversal is dictated under the guidelines set out by our cases which have addressed the issue of previous-offense testimony. *See* Coats v. State, 98 Nev. 179, 643 P.2d 1225 (1982); Reese v. State, 95 Nev. 419, 596 P.2d 212 (1979); Geary v. State, 91 Nev. 784, 544 P.2d 417 (1975); Founts v. State, 87 Nev. 165, 483 P.2d 654 (1971). *See also,* Porter v. State, 94 Nev. 142, 576 P.2d 275 (1978).[1] Accordingly, I dissent from that portion of the opinion.

The statements made by the officer and detective in the present case fall far short of those complained of in the above-referenced cases. In Reese v. State, *supra,* a Las Vegas police officer "testified that he had had 'previous contacts' with [the accused] and his brother." *Id.* at 422, 596 P.2d at 215. In Geary v. State, *supra,* an officer testified that he had arrested the accused on "another incident." *Id.* at 788, 544 P.2d at 420. In Founts v. State, *supra,* the victim testified before the grand jury that the accused had also robbed him on a previous occasion. There, the prosecuting attorney repeatedly referred to the "unusual" or "unfortunate" nature of the earlier confrontation between the accused and the victim. *Id.* at 168, 483 P.2d at 656. This court, in all three cases, held that because "[t]here was no description of or further reference to these contacts . . ." Reese at 422, 596 P.2d at 215, or any "description of the

---

[8]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case. Nev. Const., art. 6, § 19; SCR 10.

[1]In Porter v. State, *supra,* cited by the majority, Porter alleged, under the accumulated error doctrine, that a police witness' testimony regarding "mug shots" improperly implied that Porter had a previous arrest record. There, citing Wilson v. State, 86 Nev. 320, 468 P.2d 346 (1970), we refused to reverse due to Porter's failure to object, implicitly determining that plain error had not occurred. We reached that conclusion notwithstanding the fact that Porter had also presented some evidence that the line-up procedure improperly implied that he had a previous arrest record. This was in addition to an allegedly prejudicial closing argument by the prosecutor.

offense which occurred," *Founts* at 168, 483 P.2d at 656, "no damaging previous-offense testimony was introduced, and the rule proscribing proof of a distinct independent offense at the trial of a person accused of a crime was not violated." *Geary* at 788, 544 P.2d at 420-421. Here, a police officer testified that after receiving a description of the crime from the complainant, he had "come to an understanding or an idea of who the suspect might be in this particular case." The detective told the jury that he reached this conclusion when the victim said her assailant was a "young man by the name of Benny or Sid." The detective then testified that "when she mentioned Benny, I knew of Benny Manning myself." According to *Reese, Founts* and *Geary,* these statements do not rise to the level of damaging previous-offense testimony because they do not describe these previous contacts or the offense which occurred.

The detective also testified that, based on his belief that the suspect was Benny Manning, he went to the identification division of the police department to obtain a mug shot. In Coats v. State, *supra,* the detective testified that he obtained the photographs of the defendants used in a photographic lineup from the homicide division of the Las Vegas Police Department. There, this court held that the references to the homicide division and the mug shots did not introduce damaging previous-offense testimony. *Id.* at 181, 182, 643 P.2d 1226, 1227. *See also* Porter v. State, *supra.*

In my view, the references of the officer and the detective to their familiarity with Manning and the detective's testimony concerning the mug shots did not introduce damaging previous-offense testimony. Because I have concluded that the admission of the detective's and the officer's testimony did not constitute error, it is not necessary to decide whether the error was harmless beyond a reasonable doubt.

Accordingly, I would affirm both convictions.