**Clifford Henry BOWEN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–81–315.**

Court of Criminal Appeals of Oklahoma.

Nov. 30, 1984.

Richard Haynes, Haynes & Fullenweider, Jack B. Zimmerman, Houston, Tex., James Gotcher, Gotcher, Gotcher & Taylor, McAlester, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Clifford Henry Bowen was charged with and convicted of the First Degree Murders of three men at the Guest House Inn in Oklahoma City on July 6, 1980. Following the convictions, he appealed; and prior to our decision being rendered, he lodged his second request for a new trial. The ground for retrial was newly discovered evidence, and we ordered the district court to conduct an evidentiary hearing to determine the merit of his motion. The district court heard the evidence and entered its findings of fact and conclusions of law denying appellant's motion. Appellant's motions for new trial lack merit, and his judgments and sentences should be AFFIRMED.

On July 6, 1980, at approximately 2:00 a.m., three people were killed as an executioner fired two shots into each of them with a .45 caliber gun. The victims were Ray Peters, whom the prosecution theorized to be the killer's desired victim, Marvin Nowlin, and Lawrence Evans. These three were the last to leave a poolside party at the Guest House Inn which started the evening of July 5, 1980. Sometime after midnight, a large man appeared in the area of the concession machines by the pool. Later, Mary Lee Chilton positively identified appellant as the man standing near the machines on the evening in question and whom she observed as she passed by on the way to her room prior to the shootings that morning. Carrie Pitchford also identified appellant as the man standing by the poolside concession machines whom she observed when she looked out three times from the window of her room in the motel.

Appellant was initially linked to the shootings because of his suspected connection to Harold Behrens. Behrens had visited Ray Peters, a drug dealer working for him, by the poolside on the evening of the killings. In an uncharacteristic gesture, Behrens put his hand on Peters' shoulder in plain view of the man standing by the concession machines as he left the gather-

ing of people. Behrens had worked in the investigation of appellant by the Oklahoma City Police Department in 1975 as a police officer. Behrens suddenly resigned, and within a day or two, appellant dropped out of sight. A detective who had also worked in the investigation made the connection between Behrens and appellant when he heard the suspect's description. Both Chilton and Pitchford identified appellant in a photographic lineup and at an in-person lineup.

Appellant's defense at trial was alibi, as he produced a number of witnesses who testified he was at a rodeo in Tyler, Texas, until around midnight on July 5, 1980. The State theorized that appellant left Tyler, Texas, by jet and was able to reach the murder scene within 45 minutes.

On appeal, appellant's first assignment of error is that the trial court's instruction to the jury regarding circumstantial evidence was deficient in that it applied only to their finding of malice aforethought. He claims that all of the State's evidence concerning who committed the homicides was circumstantial and that our case law dictates that an instruction be given to the jury directing that the circumstances must each be consistent with one another and inconsistent with any reasonable hypothesis other than the defendant's guilt, citing *Hager v. State,* 612 P.2d 1369 (Okl.Cr.1980) and *Roth v. State,* 532 P.2d 1397 (Okl.Cr. 1975).

Appellant's assignment lacks merit for several reasons. First, his trial counsel failed to request such an instruction.

We have consistently held that where counsel is not satisfied with instructions that are given, or desires the court to give any particular instruction, it is the duty of counsel to prepare and present to the court such desired instructions and request that they be given. In the absence of such a request, the Court of Criminal Appeals will not reverse the case if the instructions generally cover the subject matter of inquiry and there is no fundamental error.

*Luckey v. State,* 529 P.2d 994, 996 (Okl.Cr. 1974). Further, we held in *Knight v. State,* 73 Okl.Cr. 107, 118 P.2d 255 (1941), that defense counsel's failure to request such an instruction will not stop this Court from reviewing this issue if the evidence presented at trial was wholly circumstantial and weak in nature. We find the evidence in the present case is neither.

At trial, the State presented the testimony of Chilton and Pitchford who identified appellant as the man who maintained a post by the concession machines near the pool immediately prior to the slayings. At approximately 2:00 a.m. the sound of gunshots rang through the motel. The manager of the motel and his wife testified they stepped to the office window to see some of the six blasts as they erupted, and later to see a large man flee the scene. After appellant was arrested in Tyler, Texas, and Oklahoma City Police interviewed him there in connection with the homicides, without being informed as to the subject of their investigation or of any details surrounding the killings, appellant volunteered that he couldn't have committed the crime as he was "too fat to run." The State's evidence was not so weak or wholly circumstantial so as to bring this case within our holding in *Knight.*

Additionally, though the trial court instructed the jury regarding circumstantial evidence in connection with its instruction concerning malice aforethought, the language of the instruction was sufficiently broad to encompass evidence of identity. The instruction includes the language:

To warrant a finding upon circumstantial evidence, each fact necessary to the conclusion sought to be established (that is malice aforethought) must be proved by legal and competent evidence beyond a reasonable doubt. Further, all the facts and circumstances proved must not only be consistent with such finding but consistent with each other and inconsistent with any other reasonable conclusion and sufficient to produce in your minds *a reasonable moral certainty that the accused committed the offense charged*

*against him with malice aforethought.* (Emphasis added.)

Thus, the jury was properly instructed as to how it must determine each element to a reasonable moral certainty, including identity, though the evidence be circumstantial.

■ Next, appellant assigns as error the trial court's failure to instruct the jury that they had to find beyond a reasonable doubt that he acted jointly with co-defendant Behrens as charged in the information. Again it should be noted that no instructions were offered by defense counsel on this issue or any other issue. Therefore we will only determine whether the lack of the appellant's now proposed instruction constituted fundamental error. Fundamental error has been described by this Court as error which when considered "in view of the whole record, is so fundamentally wrong and prejudicial that it deprived the defendant of a substantial right." *Jones v. State,* 77 Okl.Cr. 285, 141 P.2d 109 (1943). Allegations and evidence of joint action taken with another person in the commission of the crime were certainly relevant matters to be addressed at trial. They were relevant to show motive but did not of themselves stand as essential or material elements of the crime of murder. Therefore, we do not find the lack of an instruction requiring the State to establish joint action to constitute fundamental error. Accordingly, this assignment of error is without merit.

■ Appellant alleges in his appeal and in his second motion for new trial that reversible error occurred when the prosecution failed to deliver exculpatory evidence to defense counsel. However, the record does not reveal that defense counsel made a formal request for exculpatory evidence, though trial counsel contends he made an oral pretrial inquiry as to the existence of other suspects to which the prosecution answered in the negative. He now asserts that the prosecution had a duty to make known to the defense the identity of three potential suspects.

One was William Wayne Simmons. He had been arrested after Chilton picked his picture from an array of photographs. There was hearsay evidence supposedly revealed to the prosecution that Simmons told a man named Thomas Upton, Jr. that he had been at the Guest House Inn on the night of the killings. But Simmons was subsequently released when the eyewitness told officers at a live lineup that the assailant was much larger in size than Simmons.

There was also evidence that one of the three victims, Marvin Nowlin, had recently been threatened with bodily harm by a man named Larry Lowell. Appellant asserts that if the jury had been exposed to this evidence, it would have created a reasonable doubt which did not otherwise exist, citing *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Subsequent to the trial of this matter, a statement was made to South Carolina police by Deana Burris, a roommate of Ray Peters' ex-wife, Patsy Peters. This statement implicated a man named Lee Crowe, the boyfriend of Patsy Peters, who was of similar stature to that of appellant and who was within the State of Oklahoma at the time of the killings. This statement, and a subsequent one given by Deana Burris forms the new evidence which appellant claims justifies a second trial and which will be discussed later in this opinion. Appellant maintains, however, that Lee Crowe had been a pretrial suspect of which the State had a duty to advise the defense.

Appellant asserts the suppression of the allegedly exculpatory evidence regarding these suspects denied him due process of law under the authority of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, as appellant recognizes, no request was made for exculpatory evidence prior to trial. So analysis of any duty of the prosecution to deliver evidence to the defense must be made from a view before and during the trial. In *Agurs,* the United States Supreme Court stated in this regard:

[T]he prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient signifi-

cance to result in the denial of the defendant's right to a fair trial.

427 U.S. at 108, 96 S.Ct. at 2400.

[I]f the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made.

427 U.S. at 107, 96 S.Ct. at 2399.

In regard to the potential suspects, each had been eliminated from consideration upon the positive identification of appellant by Chilton and Pitchford. A police detective testified at the hearing for new trial that each of these suspects were eliminated as the evidence uncovered pointed toward appellant's guilt and not theirs.

In *Castleberry v. Crisp*, 414 F.Supp. 945, 951 (N.D.Okl.1976), the court noted:

that in a case where several eye witnesses identify a defendant as the perpetrator of a crime, or where the physical evidence clearly points to the guilt of a defendant, evidence indicating that someone else may have committed the crime would have to be almost conclusive in order to be material.

From the viewpoint of the prosecution in preparing the case for trial, and throughout the course of the trial, there was insufficient evidence to link any of the other suspects to the killings, when compared to the evidence implicating appellant, which would have put the prosecution on notice of a duty to reveal such evidence to the defense *sua sponte*. After evaluating the alleged nondisclosure in the context of the entire record and especially when we consider the unwavering eyewitness identification of the appellant by more than one person, we find that the appellant was not denied due process of law or a fair trial in this regard.

In his fourth assignment of error, the appellant maintains that the evidence was insufficient to sustain his conviction. In support of this contention he argues that there was insufficient evidence to prove the identity of the shooter and secondly that there was insufficient evidence to prove joint action.

■ Appellant's argument that there was insufficient evidence to prove the identity of the shooter is patently frivolous. Appellant points to several discrepancies in the evidence. There was clearly enough evidence presented at trial from which the jury could reasonably have concluded that he was the shooter and was guilty as charged. Therefore there is no reason for the Court of Criminal Appeals to interfere with the verdict. See, *Truelove v. State*, 545 P.2d 1270, 1271 (Okl.Cr.1976). There was conflicting testimony by Chilton and Pitchford of the color of the shirt worn by the man in the concession area. There was evidence from the State's witness that the man was pale. Appellant provided testimony that he was tanned on the date in question. "[W]here there is evidence from which the jury could conclude that the defendant is guilty as charged, we will not interfere with the verdict even though there may be sharp conflicts in the evidence." *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980). Regardless of how the appellant now characterizes the evidence presented, the record remains clear that two witnesses saw a man they each identified as the appellant standing near the concession area just prior to the killing. Two other witnesses, who actually saw the shooting, described the shooter sufficiently to establish that he was the same man observed earlier in the concession area by the first two witnesses.

■ Appellant's argument that there was insufficient evidence to prove that he had acted jointly with Harold Dean Behrens is likewise without merit. Behrens' touching of one of the victims as he left the pool area and while in full view of the appellant in conjunction with Behrens' prior connection to the appellant is strong circumstantial evidence of joint action. This is especially true when one considers the fact that the victim touched was a person who dealt drugs for Behrens and who Behrens had a motive to eliminate because Peters had become a liability to him. Jack Zumwalt, Behrens' homosexual

lover, testified that Behrens told him in June of 1980 that he was afraid Peters was going to become a police informant because he was facing several possible convictions. Section 432 of 22 O.S.1981, provides that an informant need not specifically allege additional acts when charging participants in a crime to make distinctions of accessories and of principals. *Bowen v. State,* 606 P.2d 589 (Okl.Cr.1980). Though there was evidence of joint action, appellant could have been convicted as a principal regardless of the presence of surplusage in the information. Appellant's fourth assignment is without merit.

■ In his next assignment of error, appellant argues that the trial court erred in permitting the State to introduce evidence of other crimes. He first complains that testimony by a police sergeant improperly revealed to the jury that he had been investigated by the Oklahoma City Police Department's organized crime unit. This testimony however was relevant in that it served to supply the link between the appellant and Behrens. Behrens had been a police officer involved with the organized crime unit's investigation of the appellant in 1975. Appellant further complains that testimony was introduced that he made his living through gambling. In other circumstances, this could have been improper, but in view of the crimes committed and the circumstances surrounding their commission, the appellant's information concerning his claimed occupation was admissible. Appellant also complains that testimony concerning illegal activities conducted by Behrens were improperly allowed. These activities by Behrens were, however, introduced to shed further light on reasons for commission of the crimes. Additional arguments that appellant's life style required resort to illegal activities and references to the appellant as a professional hit man and killer were fair inferences based on the facts presented. Clearly, all these matters were admissible as relating to the appellant's motive and intent in the commission of the crimes. 12 O.S.1981, § 2404(B). "Wide latitude is permitted in the admis-sion of evidence to establish motive." *Frye v. State,* 606 P.2d 599 (Okl.Cr.1980).

■ The remaining matter of which appellant complains in this assignment of error is the testimony that he was arrested at the same time several firearms were seized from a residence in which he was staying. This evidence was introduced by the prosecution in response to appellant's denial of knowing anything about guns. Error, if any in this regard, was clearly invited and therefore not grounds for an error recognizable on appeal. *Goodrich v. State,* 553 P.2d 219 (Okl.Cr.1976). This assignment of error is without merit.

■ In his sixth assignment of error, appellant cites several instances of arguments by the prosecution which he maintains denied him his right to a fair trial. As appellant recognizes in his brief, there was a failure to object at trial to any of these arguments. Because of his failure to object, the appellant has waived further consideration of the arguments, except those arguments which were so fundamentally prejudicial that the court could not have been corrected by instructions to the jury. *McCall v. State,* 539 P.2d 418 (Okl. Cr.1975). After reviewing the arguments complained of and not finding any fundamentally prejudicial, this assignment of error is overruled.

■ As his seventh assignment of error, the appellant asserts that he was denied effective assistance of counsel. In his brief and during oral argument before this Court, a plethora of actions and inactions by his trial counsel is set forth to substantiate his assertion. However, for purposes of this appeal it is not necessary to enumerate each of the alleged mistakes of counsel. Appellant has fallen to the temptation of using the benefits of hindsight to now second guess and assert inadequacies on the part of his veteran and very successful trial counsel. Even with the use of his hindsight enhanced vision, the appellant has simply failed to demonstrate that there is a reasonable probability that, absent the alleged errors of which he now complains,

the verdict of the jury would have been altered or that his punishment would have been lessened. See, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, the appellant has made no showing that the justice of his sentence was rendered unreliable by a breakdown in the adversarial process caused by deficiencies in counsel's assistance. See, *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Utilizing the standards set forth in *Strickland v. Washington*, supra, it cannot be said that the appellant has been denied reasonably effective assistance of counsel.

 Next he alleges that he should be granted a new trial based upon the discovery of new evidence. The statutory grounds for granting a new trial based on the discovery of new evidence are twofold. First, the new evidence must be material to the defendant and second, the new evidence must be evidence which the defendant could not with reasonable diligence have discovered before the trial. 22 O.S. 1981, § 952. Whether or not a motion for new trial shall be granted is a matter addressed to the discretion of the trial court which, absent an abuse of discretion will not be overruled by the Court of Criminal Appeals. *Lemmon v. State*, 538 P.2d 596 (Okl.Cr.1975). In determining whether the trial court abused its discretion by refusing to grant a new trial based on the discovery of purportedly new evidence, this Court looks to whether the evidence is material, whether the accused or his counsel exercised the diligence to discover the evidence before trial, whether the evidence is cumulative and whether there is a reasonable probability that if the newly discovered evidence had been introduced at the trial it would have changed the results. *Marlow v. City of Tulsa*, 564 P.2d 243 (Okl.Cr. 1977).

In support of his first motion for new trial, the appellant presented the trial court with five separate matters. It is argued that both separately and cumulatively they constituted a valid basis for a new trial. Appellant first argues that testimony presented at the motion hearing regarding the alleged scientific impossibility of traveling from the rodeo grounds outside of Tyler, Texas, where witnesses saw the appellant, to the Guest House Inn in Oklahoma City, the scene of the homicides, within the time parameters established by trial testimony constituted newly discovered evidence which could not have, with reasonable diligence, been discovered before trial. Appellant contends that the "airplane theory" emerged on the last day of the trial thereby depriving him of an opportunity to marshall evidence against the State's theory of the case. The State, in response to the appellant's alibi witnesses had, on rebuttal, elicited testimony from a pilot who stated that it could have been possible for a jet to have transported the accused from an old airfield near the rodeo grounds to Oklahoma City within a time frame which would account for the alibi witnesses and yet justify the State's theory of the case.

There is a certain degree of controversy in the record as to whether the defense had knowledge prior to trial with regard to the prosecutor's intention to present an "airplane theory" on rebuttal. This is not the crucial issue. The issue is whether the appellant "could not with reasonable diligence have discovered" the new evidence before the trial. 22 O.S.1981, § 952.

 At the hearing on the motion for new trial the appellant went to great lengths to show in detail why it would have been impossible for him to have flown to Oklahoma City in time to commit the murders. Nevertheless, once the alibi defense was raised, addressing as it did the issue of time, the appellant could have with reasonable diligence discovered before the trial and presented at trial all the evidence which was presented at the motion for new trial hearing regarding the State's so called "airplane theory." Furthermore, at the motion for new trial hearing the evidence presented in opposition to the State's theory was an attempt to contradict the testimony of the State's aviation expert. This Court has heretofore held that "newly discovered evidence which goes to impeach-

ment purposes only is not sufficient to warrant a new trial." *Marlow v. City of Tulsa,* supra. We have not looked favorably on attempts to base a motion for new trial on evidence which merely tends to discredit or impeach the trial testimony of an expert in a technical matter. *Maxey v. State,* 526 P.2d 951 (Okl.Cr.1974). Thus, the trial court did not abuse its discretion when it denied the motion for new trial as based on the attempts to discredit the State's airplane theory.

■ The second matter argued with regard to the motion for new trial centers around an affidavit sworn to by a convict, Thomas Upton, Jr., stating that Simmons had admitted that he was present at the Guest House Inn on the night of the murders. In view of the testimony presented which showed that Simmons had a facial but not a physical resemblance to the appellant, we find this evidence is not significantly material and therefore not a basis for a new trial.

■ The third matter addressed by the motion for new trial was testimony by Harold Dean Behrens that he had never met the appellant, did not know him, and did not ask him to commit the murders. The record however shows that Behrens was never subpoenaed to testify at the trial on the appellant's behalf. Whether or not Behrens would have testified at trial is speculation which the trial court correctly avoided when it overruled the motion as based on these grounds. The appellant did not use due diligence when he failed to subpoena Behrens and thus elicit his testimony at the trial. Accordingly, the trial court did not abuse its discretion when it overruled the motion for new trial as based on Behrens' testimony.

■ The fourth matter on which appellant relied in his motion for new trial was testimony from a police detective whose investigation had revealed that one of the victims had been threatened by a person named Larry Nowell. The appellant was aware of the detective's involvement in the case. Not only was there a failure to exer-

cise due diligence in obtaining this testimony at trial, the testimony at the hearing on the motion for new trial fails to demonstrate anything which was material to the appellant. Accordingly, the trial court did not abuse its discretion when it overruled the motion as based on this evidence.

■ The final matter addressed by appellant arises out of an affidavit by an attorney in Texas who had represented him when he was questioned in Texas by an Oklahoma detective. The attorney contradicted prior trial testimony when he stated that upon mention of Behrens' name the appellant had not given any reaction which would have indicated a relationship with Behrens. This attempt to impeach prior trial testimony is not sufficient to warrant a new trial. *Marlow v. City of Tulsa,* supra.

In view of the evidence both separately and cumulatively presented in support of the first motion for new trial and in view of the applicable law, the trial court did not abuse its discretion when it overruled appellant's first motion for new trial.

Appellant's second motion for new trial is based upon the statement of Deana Burris, which was not made until eight months after the trial. This Court directed the district court to conduct an evidentiary hearing and to enter its findings of fact and conclusions of law.

Deana Burris had been a roommate of Ray Peters' ex-wife and she testified that she overheard Patsy Peters and her boyfriend, Lee Crowe, discuss killing Ray Peters in June of 1980. The three shared an apartment in South Carolina, and it was allegedly Patsy's desire to kill Ray Peters to keep him away from their children. Crowé allegedly promised to do the killing. Supposedly, Patsy had tried to lure Ray Peters to South Carolina, but he refused to come. About the time of the killings in question, Patsy and Crowe traveled to Oklahoma with Patsy's children to visit the childrens' grandparents.

Police investigators knew of Patsy's and Crowe's presence in Oklahoma at the time

of the killings, but dropped Crowe as a suspect upon the eyewitnesses' identification of appellant and upon learning that Crowe had been in Madill, Oklahoma with Patsy's father on the evening of the shootings.

Appellant claims that had the jury heard this evidence, a reasonable doubt would have been created; that this evidence would have materially affected the verdict. However, there is evidence that both eyewitnesses viewed photographic arrays with Lee Crowe's and appellant's pictures. Each witness identified appellant, and failed to identify Crowe as being at the motel on the evening of the killings.

Ms. Burris was quite candid in discussing her career as a prostitute and of her dependence on certain narcotic drugs at the time she overheard the conversations in June, 1980. Her testimony went uncorroborated.

The district court made a thorough and exhaustive order in this matter. It found that the information regarding Crowe could have been discovered through the exercise of due diligence by requesting a list of suspects prior to trial, but the defense failed to do so. Also, the district court noted that the appellant failed to show under what theory of evidence law that the rumors, suspicions and innuendos concerning Crowe would have been admissible in the trial of the case. Further, the district court correctly found that the mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial, does not establish materiality. 22 O.S.1981, § 952 (Seventh).

The district court did not abuse its discretion and properly disposed of appellant's motion.

▇▇ Appellant in his ninth assignment of error asserts that the trial court erred by failing to advise him of his statutory right to personally argue against the sentence of death. However, he cites no authority for this contention other than 21 O.S.1981, § 701.10 and to say that he was

thereby deprived of due process of law. Title 21 O.S.1981, § 701.10 provides in pertinent part that, "the state and the defendant or his counsel shall be permitted to present argument for or against sentence of death." Both the appellant and his counsel were present in the courtroom when the judge gave the appellant's attorney an opportunity to make an argument during the penalty stage of the trial. Throughout the entire trial the appellant had elected to be represented by his privately retained attorney. It is clear that the appellant was aware of the opportunity given his attorney to argue on his behalf. In view of these circumstances, the trial court did not err by not instructing the appellant that he had the right to personally argue the issue of the penalty to the jury.

▇▇ In his tenth assignment of error, appellant claims that the testimony given by Mary Chilton was hypnotically enhanced thereby denying him the right to confront the witness. Appellant argues that Chilton's testimony should not have been admitted into evidence. This issue however was not brought up during the trial, but was initially addressed in appellant's motion for new trial. By failing to object to the testimony at the time of its admission, appellant has waived review of the matter by this Court. See *Wells v. State*, 604 P.2d 144 (Okl.Cr.1979). See also, *Mitchell v. State*, 549 P.2d 96 (Okl.Cr.1976). But we do note that hypnosis of a witness does not *per se* create error. *See Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982). Further, no fundamental error appears in the record in this regard.

Appellant in his eleventh assignment of error asserts that 21 O.S.1981, § 701.11 violates state and federal due process requirements by failing to clearly place the burden of proof on the State. In his twelfth assignment of error, he argues that the trial court in its instructions failed to instruct on the State's burden of proof. Appellant's thirteenth assignment of error maintains that 21 O.S.1981, § 701.11 fails to prescribe the standard of proof to be

met. Appellant claims in his fourteenth assignment of error that the trial court erred by failing to instruct the jury on the standard of proof the State was required to meet in the penalty stage of the trial.

In the second stage of the trial the jury was instructed in part as follows:

You are instructed that in the event you unanimously find that one or more of these aggravating circumstances existed beyond a reasonable doubt, then you would be authorized to consider imposing a sentence of death.

If you do not unanimously find beyond a reasonable doubt one or more of the statutory aggravating circumstances existed, then you would not be authorized to consider the penalty of death. In that event the sentence would be imprisonment for life.

If you do unanimously find one or more of these aggravating circumstances existed beyond a reasonable doubt and you further find that such aggravating circumstance or circumstances is outweighed by the finding of one or more mitigating circumstances, the death penalty shall not be imposed. In that event the sentence would be imprisonment for life.

■■■ Prior to the issuance of this instruction, the appellant did not object to the instructions, did not offer any instructions of his own, and failed to challenge the validity of 21 O.S.1981, § 701.11. In view of his failures in this regard and after a review of the record on appeal these issues have been waived and are not properly before us. *Jetton v. State*, 632 P.2d 432 (Okl.Cr.1981). However, this Court has previously held that this statute does not unconstitutionally shift the burden of proof to the defendant. *Ake v. State*, 663 P.2d 1 (Okl.Cr.1983); *Parks v. State*, 651 P.2d 686 (Okl.Cr.1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983). This Court has consistently held that the trial judge's exercise of discretion in instructing the jury will not be interfered with as long as the instructions considered as a whole fairly and accurately state applicable law.

*Green v. State*, 611 P.2d 262 (Okl.Cr.1980). A review of the record reveals no abuse of discretion.

In his last assignment of error, appellant argues that he was denied due process of law because he was held to answer for a capital crime without an indictment by a grand jury. In his brief, appellant recognizes that the United States Supreme Court addressed the issue of whether or not the right to indictment afforded in the Fifth Amendment to the United States Constitution should be extended to state prosecutions in *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), and ruled that the right to be indicted by a state grand jury was not encompassed within the meaning of "due process of law" contained in the Fourteenth Amendment. Appellant, however, asserts that the Supreme Court's holding in *Hurtado v. California*, supra, should no longer be followed.

■■■ We have heretofore held that a prosecution in Oklahoma may be by either indictment or information. *Towning v. State*, 521 P.2d 415 (Okl.Cr.1974). This view has further been recognized by the federal Court of Appeals for the Tenth Circuit. *Freeman v. Page*, 443 F.2d 493 (10th Cir.1971). Accordingly, this assignment of error is without merit.

■■■ The jury recommended that appellant receive the death penalty for his part in these crimes. The evidence of the cold and calculated executions supports the jury's finding of three aggravating circumstances. First, it was found by them that the murders were especially heinous, atrocious or cruel. Also, that appellant created a great risk of death to more than one person. Finally, the jury found that appellant killed for the purpose of avoiding or preventing a lawful arrest or prosecution. These findings are fully warranted under the evidence.

As required by 21 O.S.1981, § 701.13(B) this Court makes the following findings with regard to sentences of death which have been imposed by the jury. According-

ly, we find that: (1) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) the evidence supports the jury's finding of statutory aggravating circumstances as enumerated in 21 O.S.1981, § 701.12; (3) and the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases after considering the crime and the defendant.[1] 21 O.S.1981, § 701.13(C)(3).

For the reasons herein stated, the judgments and sentences appealed from should be, and the same are hereby AFFIRMED.

PARKS and BRETT, JJ., concur in results.

**1.** *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984), *cert. denied,* —— U.S. ——, 104 S.Ct. 3548, 82 L.Ed.2d 850; *Stafford v. State,* 669 P.2d 285 (Okl.Cr.1983), *vacated on other grounds,* 467 U.S. 1212, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983); *vacated on other grounds,* 467 U.S. 1212, 104 S.Ct. 2652, 81 L.Ed.2d 359 (1984); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177; *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983); *Jones v. State,* 648 P.2d 1251 (Okl. Cr.1983), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002; *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); and, *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *cert. denied,* 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981).