# RICHARD HARDISON, Appellant, v. THE STATE OF NEVADA, Respondent.

## No. 18538

October 24, 1988

763 P.2d 52

*Beury & Schubel,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, *Ronald C. Bloxham,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

### Facts

Around 7:30 p.m. on August 21, 1986, at least three individuals—Pete Johnson, his girlfriend Althea Johnson, and Willie "Sweetpea" Lockett—were gathered on Madison Street in Las Vegas. As Althea was talking to Pete, a man carrying a gun approached. Althea recognized the man as "Noochie," appellant Richard Lee Hardison, whom she had known most of her life. As Hardison approached the group, he commenced shooting and running after Pete. One of the shots penetrated the wall of an apartment and grazed its occupant, O. C. McMurray. Charles Boyd, who was on the porch of his house, watched Hardison pursue and shoot Johnson in the back; and then, after the victim importuned Hardison not to shoot him again, witnessed Hardison shoot Pete a second time in the back, Pete died within minutes.

Immediately after the shooting, Willie Lockett told Officer Thompson that he saw Noochie Hardison shoot Pete as Pete was trying to run away. Lockett also claimed that he had almost been hit by an errant bullet. According to Gladys Johnson (the victim's mother), Lockett rushed into her home without knocking and told her that Pete had been shot by Noochie Hardison.

After listening to the witnesses and knowing personally that Hardison's street nickname was "Noochie," Officer Thompson relayed a description of Hardison to secure his arrest. Later that evening, Hardison called the police from a pay phone and surrendered; Hardison was arrested for the murder of Pete Johnson.

At Hardison's preliminary hearing, aside from the testimony of the doctor who performed the autopsy on Pete Johnson, the State strictly relied on the testimony of Lockett. At trial however, Lockett unsuccessfully attempted to invoke the Fifth Amendment against self-incrimination. Subsequently, Lockett denied ever having been present at the shooting and claimed that he had fabricated the story he told to the police and at the preliminary

hearing. Lockett also denied telling Gladys Johnson that her son had been shot and that Hardison was the shooter. When Lockett was asked how long he had known Hardison, Lockett replied, "Not too long. I met him in the joint." Lockett admitted that he was in prison at the time of trial and that his testimony was placing his life in jeopardy.

The jury returned with a verdict of first degree murder with use of a deadly weapon. In a separate penalty hearing, finding two aggravating circumstances and no mitigating circumstances, the jury imposed the sentence of death.

On appeal, Hardison contends that the trial court erred in (1) denying two motions for mistrial based on alleged introductions of prior bad acts of Hardison, (2) admitting Willie Lockett's preliminary hearing testimony and Lockett's statement to the police, (3) failing to give Hardison an opportunity to address the sentencing court, and (4) allowing the jury, during the penalty phase, to consider a gross misdemeanor.

## Discussion

### The Motions for Mistrial Alleging Introduction of Prior Bad Acts

During the course of the trial, Hardison made two motions for mistrial alleging that the State had improperly introduced evidence of prior bad acts. In Manning v. Warden, 99 Nev. 82, 659 P.2d 847 (1983), we noted that "the test for determining a reference to criminal history is whether 'a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.'" 99 Nev. at 86, 659 P.2d at 850. One of Hardison's motions for mistrial was based on Officer Thompson's statement that he knew that Hardison's street nickname was "Noochie." Hardison argues that Thompson's statement was an improper reference to Hardison's criminal record. Although the officer's testimony concerning Hardison's street name was inappropriate and perhaps suggestive of a criminal background, the trial judge correctly denied the motion for mistrial because any error in admitting the testimony was manifestly harmless in the face of overwhelming evidence of Hardison's guilt.

Hardison's other motion for mistrial concerned Willie Lockett's statement that he had met Hardison "in the joint." This statement was not proper since it probably suggested to the jury that Hardison had a criminal record. However, a number of factors lead us to conclude that the motion for mistrial was properly denied. First, this information was not sought by the State but was simply Lockett's response to the question, "How

long have you known the defendant?'' Second, upon defense counsel's objection to Lockett's reply, the judge immediately instructed the jury, ''Ladies and Gentlemen, the indication as to where this witness met Mr. Hardison is not relevant or material and should be disregarded by you, and I'm instructing you to disregard it and give it no weight whatsoever.'' Third, any prejudicial effect was minimized by the fact that there was no mention as to whether there had been one or more previous offenses or what the nature of the offense or offenses were. Fourth, in light of the overwhelming evidence of Hardison's guilt,[1] we are convinced that Lockett's improper comment was harmless beyond a reasonable doubt. *See, e.g.,* Manning v. Warden, *supra,* 99 Nev. at 87, 659 P.2d at 850.

### Admitting Lockett's Preliminary Hearing Testimony

[Headnote 3]

Hardison suggests the trial court erred in admitting Lockett's preliminary hearing testimony and Lockett's statement to the police. We disagree.

NRS 51.035 in pertinent part provides:

> ''Hearsay'' means a statement offered in evidence to prove the truth of the matter asserted unless: . . .
>
> (2) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
>
> (a) Inconsistent with his testimony;

Both Lockett's statement to police and his preliminary hearing testimony unequivocally indicated that Lockett was an eyewitness to the murder and that he identified Hardison as the killer. However, at trial, Lockett testified that he was not present at the time of the murder and did not know who killed Pete Johnson. Lockett's trial testimony was in direct conflict with the two previous statements. Accordingly, the statements were admissible as evidence pursuant to NRS 51.035(2)(a). *See, e.g.,* Levi v. State, 95 Nev. 746, 749, 602 P.2d 189, 190 (1979) (where testimony of two witnesses at the preliminary hearing was inconsistent with their testimony at trial, preliminary hearing testimony was admissible for all purposes pursuant to NRS 51.035).

### Opportunity to Address the Sentencing Court

Hardison asserts that he was denied an opportunity to address

---

[1]There were at least three eyewitnesses to Hardison's killing of Pete Johnson.

the sentencing court. Specifically, relying on NRS 176.015(2),[2] he claims that the trial court had an affirmative duty to advise him of the possibility of giving an unsworn statement to the jury. However, NRS 176.015(2) is inapplicable to the instant case because a more specific statute, NRS 175.552, deals with the procedure for determining the appropriate punishment in a first degree murder case. *See* La Pena v. State, 96 Nev. 43, 47, 604 P.2d 811, 813 (1980) (a specific statute dealing with the subject at issue prevails over a general statute). That is, once the jury found Hardison guilty of first degree murder, the trial court had no choice but to hold a separate penalty phase wherein, pursuant to NRS 175.552, "evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to sentence. . . ." Under the procedures provided by NRS 175.552, Hardison was given every opportunity to present any information in mitigation of his punishment. Indeed, our review of the record persuades us that Hardison was afforded all the protections to which NRS 175.552 entitles him.[3]

Relying again on NRS 176.015(2), Hardison additionally asserts that he should have been given opportunity to address the court at the time the sentence of death was formally imposed. However, after a jury has assessed a penalty of death, the judge has no discretion and must enter judgment according to the

---

[2]NRS 176.015(2) provides:

> Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of his punishment.

[3]Analogous to the instant case is Bowen v. State, 715 P.2d 1093 (Okla. Crim.App. 1984). In addressing an argument virtually identical to Hardison's—that the court erred by not instructing the defendant that he had the right to personally argue the issue of the penalty to the jury—the *Bowen* court reflected:

> [H]e [defendant] cites no authority for this contention other than 21 O.S. 1981, sec. 701.10 . . . [which] provides in pertinent part that, "the state and the defendant or his counsel shall be permitted to present argument for or against sentence of death." Both the appellant and his counsel were present in the courtroom when the judge gave the appellant's attorney an opportunity to make an argument during the penalty stage of the trial. Throughout the entire trial the appellant had elected to be represented by his privately retained attorney. It is clear that the appellant was aware of the opportunity given his attorney to argue on his behalf. In view of these circumstances, the trial court did not err by not instructing the appellant that he had the right to personally argue the issue of the penalty to the jury.

715 P.2d at 1103.

verdict of the jury. *See* NRS 175.552; NRS 175.554; NRS 176.445. Thus, a statement by Hardison in his own behalf would serve no function. We reemphasize that, because the specific statutes dealing with the imposition of punishment in a first degree murder case override the general statutes dealing with punishment, the requirement of NRS 175.015 is not applicable to hearings where the death penalty is formally imposed.

*Allowing the Jury to Consider a Gross Misdemeanor*

During the penalty phase, the State introduced evidence that Hardison had been convicted of conspiracy to commit grand larceny from the person—a gross misdemeanor. Hardison claims this was error mandating a new penalty phase. Hardison is mistaken.

Hardison bases his argument on the assumption that only felonies are admissible in the penalty phase of a first degree murder. While it is true that the conviction could not have been used as an aggravating circumstance because it did not fit into any of the enumerated aggravating circumstances listed in NRS 200.033, the conviction was properly admitted under NRS 175.552. Indeed, in dealing with a similar argument, we noted:

> While it is true that the items objected to by appellant are not aggravating circumstances [outlined in NRS 200.033], appellant fails to recognize the import of NRS 175.552 which provides that during a penalty hearing "evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim *and on any other matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible.*" (Emphasis supplied.) This statute clearly indicates and we so hold that NRS 175.552 is not limited to those nine aggravating circumstances outlined in NRS 200.033. Furthermore, the United States Supreme Court in Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), ruled that the relevant factors to be considered by a jury in imposing a penalty for a capital crime are "the character and record of the individual offender and the circumstances of the particular offense." Therefore we conclude that the district court did not err in admitting evidence of the appellant's character even though such evidence did not consist of aggravating circumstances.

Allen v. State, 99 Nev. 485, 488, 665 P.2d 238, 240 (1983). Thus, in the instant case the State is correct in claiming that

Hardison's gross misdemeanor conviction was properly introduced to show Hardison's character.

Accordingly, having reviewed the issues raised by Hardison and finding them without merit, we affirm the judgment of the district court.