14779

STATE v. WILLIAMS

(199 S. E., 906)

*Messrs. Charles M. Pace, Nicholls & Russell* and *Alton Crow,* for appellant,

20

*Mr. S. R. Watt, Solicitor,* for the State,

November 30, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On October 4, 1937, James McMillan was shot and killed on a public road in the County of Spartanburg. For this crime Bloomer Williams, Jerry Babb and Andy Babb were indicted. There was a verdict of manslaughter as to all of them, and their punishment was fixed at twenty years' confinement in the State penitentiary. The defendant, Bloomer Williams, appeals from this judgment upon several specifications of error. He complains that there was no evidence to support a verdict as to him, and that the Court erred in overruling his motion for a directed verdict. It is urged on his behalf that there is a lack of evidence showing any intent or motive, and that there is nothing in the record which in any way implicates the appellant in the murder of James McMillan, and further that the State failed to make out a case of conspiracy on the part of the defendants to take the life of the deceased.

The testimony for the State discloses:

James McMillan was a Negro tenant of W. R. Moseley, and lived and worked upon the farm of the latter in Spartanburg County. On the day of his death he was riding on a wagon with Mr. Moseley, hauling a load

of cotton to the gin of Mr. J. H. Mills for the purpose of having the cotton ginned. They were taking the most direct route to the gin, and their road led by the home of the · appellant, Bloomer Williams. The wagon was drawn by a pair of mules. Moseley was driving, and McMillan was sitting atop the cotton with him, but somewhat to his right, and one or two feet behind him. Bad blood existed between Moseley and the appellant, growing out of the alleged killing of appellant's dog by Moseley. Ill feeling likewise existed between McMillan, the deceased, and Jerry Babb. It appears that the day before, Babb had beaten the Negro.

As the wagon passed the home of the appellant, Moseley saw him in his yard and spoke to him, but received no response. The wagon proceeded up the road toward the gin, and at a point two or three hundred yards beyond appellant's home, turned into a narrower road. After Moseley had driven about a half mile on this road he and McMillan were overtaken by an automobile driven by Williams, who was accompanied by Jerry Babb, Andy Babb, and another man, named Sitton. This car passed them and stopped in a hollow of the road, just beyond them, practically blocking all passage. As Moseley and the deceased approached this spot on the wagon of cotton, Williams, with a pistol in his hand, jumped from the car, followed by the others. Moseley managed to drive his wagon to the left of the car in passing, taking the side ditch, and as he did so, Williams ordered him to stop, stating, "You —— of a ——, I am going to kill you for killing my dog." Moseley denied killing the dog, and this accusation and this denial were repeated two or three times. When the wagon had proceeded on for several feet, Williams stated, "You did, and we are going to whip hell out of you."

· As the wagon continued on its way, Williams, flourishing his pistol, jumped on the brake beam of the wagon. Moseley thereupon reached into the cotton and secured a pistol which he had obtained from the deceased before

they left home, and told the appellant that if he climbed upon the wagon he would shoot him. The appellant then jumped from the wagon, picked up a rock with his left hand, and ran behind the wagon, frightening the mules, and raised his gun as though to shoot. By this time the mules were on the run, ascending the hill and nearing its crest. In the meanwhile, Andy Babb and Jerry Babb were following behind Williams, crying out, "Kill him"; "Kill him." And Jerry Babb said to Williams, "If you haven't the guts to shoot, give it (the pistol) to me and I will kill the ———— of a ———." As Williams and the Babbs pursued the wagon on foot, they continued to order Moseley: "Stop!" "Stop!" And Jerry Babb said, "We are going to kill you. Stop!" The appellant gave Jerry Babb the pistol, who then ran on up about twenty feet and shot one time, after which he ran forward another twenty feet, and shot again. He then ran up once more, and shot the third time. The second shot killed James McMillan, who was still on top of the wagon, and who according to the testimony for the State, had done nothing and had said nothing. The two Babbs, Andy and Jerry, and the appellant, Williams, pursued the wagon, with the mules running and with Moseley striving to escape them, for a distance of 60 to 75 yards, to the top of the hill.

Later, when the sheriff of Spartanburg County, investigating the homicide, questioned these men at their respective homes, concerning the affair, each denied being present, denied any participation therein, and asserted that they knew nothing about it. The Babbs are brothers. Andy Babb was a tenant of Williams, and all of the parties were near neighbors.

For the defense it is claimed that Jerry Babb was not shooting at Moseley, but was shooting at McMillan, who it is said drew a pistol on Jerry Babb and threatened to kill him at the time when Williams first accosted Moseley in the road, and that the appellant gave Babb the pistol to defend his life. On trial all of the defendants admitted

that the road was blocked by the automobile, and that despite this Moseley succeeded in keeping his team in motion. Williams testified ·that he intended to whip Moseley, but did not intend to kill him.

Under these facts and circumstances, it is urged on behalf of Williams that he could not be held for the murder of McMillan by Babb. In our opinion, there was ample testimony to go to the jury. The jury was fully warranted in taking the view that the two Babbs and Williams were attempting to· kill Moseley, and in so doing killed McMillan by mistake, in which case each of the three would be guilty in the same degree.

The jury were properly instructed upon every question of law legitimately raised by the evidence; the different requirements of the law as to murder and its various degrees, and as to manslaughter and self defense, were all explained to them. And they were instructed that the State must satisfy them beyond a reasonable doubt of the guilt of the defendants before they could be convicted.

But it is said by the appellant that there is no evidence of common design or concerted action or conspiracy to commit murder.

There can be no doubt of the general rule of law that a person engaged in the commission of an unlawful act is legally responsible for all the consequences which naturally or necessarily flow from it, and that if he combines and confederates with ،others to accomplish an illegal purpose he is liable *criminaliter* for everything done by his confederates which follows incidentally in the execution of the common design, as one of its probable and natural consequences, even though what was done was not intended as a part of the original design or common plan. 14 Am. Jur., Sec. 80, page 823; and, see *State v. Gilbert et al.,* 107 S. C., 443, 93 S. E., 125; *State v. Newman,* S. C., 80 S. E., 482; *State v. Jenkins,* 14 Rich., 215, 94 Am. Dec., 132; *Spies v. People,* 122 Ill., 1, 12 N. E., 865; 17 N. E., 898, 3 Am. St. Rep., 320;

*State v. Darling*, 216 Mo., 450, 115 S. W., 1002, 23 L. R. A. (N. S.), 272, 129 Am. St. Rep., 526.

■■ It may also be regarded as a well-settled principle of law that a man will be held guilty of murder or manslaughter who in the attempt to kill one person by mistake kills a third person, although there is no intention or design to kill such third person. The three defendants participated in a felonious assault, and if, while engaged in the effort to kill Moseley, either one had fired the shot which killed the deceased, all would have been guilty of the crime, although they had no design or intention to injure or kill the deceased. Under the circumstances detailed by this testimony, the jury were warranted in finding that the act of one of the defendants was the act of all.

■ The law is that when two or more persons aid, encourage, and abet each other in the commission of a crime, all being present, all are principals and equally guilty.

The theory of the case maintained in the trial Court by the appellant, that he gave his pistol to Jerry Babb for the purpose of enabling Babb to defend himself when the deceased allegedly threatened to kill him, was fully presented to the jury, and they rejected it.

■ Error is predicated upon the fact that after the jury had received the main charge from the trial Judge and had retired to their room for deliberation, they were immediately recalled by the Judge, who thereupon instructed them thus:

"Mr. Foreman and gentlemen, in my charge to you I overlooked at the proper time and place to charge you another principle of law in this case. It is this: 'Where two or more persons conspire together to commit a crime, and the crime is committed, all those who are present to aid and abet and assist in the commission of that crime are equally guilty—the acts of one become the acts of all.'

I should have charged you that at the regular time, but I overlooked it. Is there anything further, now, gentlemen?

"Counsel states: 'No, sir.'"

It is argued that this act of recalling the jury had the effect of leaving the indelible impression on their minds that the trial Judge was of the opinion that a case of conspiracy had been established against the defendants, and constituted an invasion of the province of the jury. It is said that in so doing the trial Judge conveyed his opinion of the force and effect of the testimony. It is further urged that a charge so belatedly given was prejudicial to the appellant, in that it singled out and unduly emphasized (although of course not so intended), the theory of conspiracy.

We are unable to attach any serious importance to the exceptions raising this question. In the instruction complained of, the law of conspiracy was correctly charged, although not elaborated upon, nor was a fuller charge requested at the conclusion of it. The instruction is in substantial agreement with that approved by the Court in the *State v. Ameker*, 73 S. C., 330, 53 S. E., 484. The instruction complained of is a plain statement of the law, and carried with it no suggestion, direct or indirect, of the trial Judge's opinion of the facts. Nor, under the circumstances, do we find error in the course he followed in recalling the jury for this additional instruction, which had been overlooked.

The appellant complains because of alleged error of the trial Judge in overruling his objection to the introduction of certain testimony upon the ground of its being irrelevant and incompetent. We have examined the record, and find no error.

Error is predicated upon the ground that the sentence of twenty years imposed by the trial Judge is excessive and unreasonable. In imposing the sentence, we find no abuse of discretion by the trial Judge. The Judge wisely exercised his discretion.

All exceptions are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.