17817

STATE, Respondent, v. W. F. EDGEWORTH, Appellant
(121 S. E. (2d) 248)

*Messrs. Leppard & Leppard,* of Chesterfield, *for Appellant,*

*Robert L. Kilgo, Esq., Solicitor,* of Darlington, *for Respondent,*

August 3, 1961.

TAYLOR, Chief Justice.

Defendant was tried in the Court of General Sessions for Chesterfield County under an indictment charging him with housebreaking and larceny. It was contended by the State that certain items which had been taken from a house under construction in Chesterfield County were subsequently found in a house under repair by defendant in Darlington County. Defendant was found guilty of the charge of larceny and appeals upon exceptions which present, first, the question of whether defendant's motion for a new trial upon the ground that the solicitor's argument to the jury was improper and prejudicial should have been granted. The following excerpt from the Transcript is pertinent to the question at hand:

"Q. Sheriff, did you talk to the defendant in jail? A. Yes, sir.

Q. Did you inform him of the charges and claims made in the case concerning the plumbing equipment? A. Yes, sir.

Q. Did you ask for an explanation of it? A. Yes, sir.

Q. What did he say? A. He wanted to talk to his attorney.

Q. Did he talk to you about it at all? A. No, sir.

Q. He said he wanted to talk—Objection by Mr. Clayton: May it please the Court, we don't think this is relevant testimony.

The Court: No, sir. Mr. Foreman and gentlemen, the defendant is under no duty to talk to the sheriff or any investigating officer in a matter like this and he is within his rights to refuse to talk to him and say he wanted to—ask to talk to his attorney.

Sol. Kilgo: Is his Honor ruling in spite of the fact that the articles alleged to have been stolen were in the hands of the defendant under the law that he makes no explanation of how he got possession of the articles?

Mr. Clayton: They haven't proved that anything was in his hands.

The Court: I held that he had a right to ask for an attorney and is under no duty to talk to the law enforcement officers about it.

Sol. Kilgo: I would like to ask this question—I, of course, want to be within your Honor's ruling.

Q. Did you ask him to explain the presence of these articles that have been described in the job that he was conducting? A. Ask that again?

Q. Did you ask him to explain why these articles described in this case were in the job that he was conducting at Society Hill or how they were found in his possession or how they came in his possession? A. I don't remember the exact words of the conversation, but I asked him some questions about the things that had been found.

Q. And did he make any explanation? A. No, sir.

The Court: That is perfectly competent."

Thereafter, the following transpired while the solicitor was arguing to the jury:

During closing argument, the Solicitor was arguing to the effect that if a new sofa had been purchased by his wife "and the Sheriff comes to my house and asks me where that

sofa came from, I am not going to say, 'I am not talking until I get a lawyer.' "

"Objection by Mr. Clayton: That is argument which is improper; the Court has ruled out anything about not talking until he got a lawyer. Your Honor ruled it out when the Sheriff was on the stand and the Solicitor is arguing it now.

The Court: I think his argument is proper and the motion is denied.

Mr. Clayton: Is your Honor ruling that he can argue what your Honor ruled out?

The Court: I didn't rule it out. I explained it to the jury, sir."

Thereafter, when the trial Judge inquired of counsel if they had "Any exceptions or requests to charge," defendant's counsel stated:

"Mr. Clayton: All right, sir. And then I further request that your Honor charge the jury that the fact that this man requested an attorney is not to be used either for or against him that that is a matter for—

The Court: (Interrupting) I have already charged them, Mr. Clayton, during the trial of the case and in my charge that this man had a right not to discuss this case with an officer when he was arrested and to ask for an attorney.

Mr. Clayton: All right, sir.

The Court: Is there anything further you want charged?

Mr. Clayton: No, sir."

It is apparent, therefore, that the Court ruled that defendant was under no duty to talk to the sheriff or any investigating officer and was within his rights in asking to be permitted to talk with his attorney; and having ruled, that should have ended the matter. There is no question, however, but that it was competent for the sheriff to testify that defendant gave no explanation as to how he came into possession of the alleged stolen goods, as it is generally held that whenever the property of one, which had

been taken without the owner's knowledge or consent is found in the possession of another, it is incumbent upon the other to prove how he came by it. Otherwise, the presumption is that he obtained it feloniously, *State v. Winter,* 83 S. C. 153, 65 S. E. 209; *State v. Bennet,* 3 Brev. 514; *State v. Garvin,* 48 S. C. 258, 26 S. E. 570; and it is not improper for the solicitor to comment on the accused's failure to explain his possession of stolen property, *People v. Miller,* 45 Cal. App. 494, 188 P. 52; *People v. Waugh,* 30 Cal. App. 402, 158 P. 336; *People v. Marcus,* 246 N. Y. 637, 159 N. E. 682; *Starr v. State,* 63 Okl. Cr. 302, 74 P. (2d) 1174; *Vineyard v. State,* 131 Tex. Cr. R. 476, 100 S. W. (2d) 362; 23 C. J. S., Criminal Law, § 1098, p. 564.

Defendant having requested service of an attorney and having exercised such right, there was no impelling reason why the solicitor should have made any comment thereabout, as it is always the duty of the prosecuting attorney to treat the defendant in a fair and impartial manner and this applies while making argument to the jury. It is sometimes difficult to draw the line between proper and improper argument, but counsel's remarks must be confined within the record. However, some latitude must necessarily be allowed and it must, to a large extent, be left to the wise discretion of the Circuit Judge.

Under the circumstances of this case, we are of opinion that the failure of the Circuit Judge to restrain the solicitor in his argument does not warrant setting aside the verdict on that ground as it will not do to say that for every departure from the record the verdict of the Court will be set aside; *State v. Robertson,* 26 S. C. 117, 1 S. E. 443; *State v. McDonald,* 184 S. C. 290, 192 S. E. 365; *State v. Duncan,* 86 S. C. 370, 68 S. E. 684; *State v. Williamson et al.,* 65 S. C. 242, 43 S. E. 671.

Appellant next contends error in refusing motion for a directed verdict. The testimony is to the effect that certain fixtures, *i. e.,* a bathtub, lavatory, commode, kitchen sink and

electric hot water heater, had been stolen from a house under construction in Chesterfield County; that the bathtub in question had been installed but had been torn from the wall and removed. Later, a bathtub similar to the missing one was found in another home which was being repaired under contract by defendant. On the tub were splotches of cement similar to that used in installing the sheet rock around the tub in the house under construction. It was testified that such cement could not have come from the house in which it was found as the bathroom had been completed and painted with the exception of that portion immediately adjacent to the tub prior to the tub's being delivered by defendant; and this cement was on the tub before being installed in the home under repair. It was further described as having "a little broken off place on the bottom of the tub on the front side" as did the missing tub.

The electric hot water heater in question was a Westinghouse which had been damaged in shipping with a dent on the right back side and the latches which held the top had been damaged because of which the purchaser had been allowed a discount. In the home under repair was found a heater of similar type and size with the name plate "Brown" attached by way of holes which had been punched into the cabinet in such a way that it was not level. The latch to the hot water heater showed it had been straightened and there was a place on the right back side where the cabinet had been damaged similar to the one stolen. The seller testified that he inspected the hot water heater, that he had never heard of one with the name "Brown," but that upon investigating the controls he found it to be the same as a Westinghouse and that the serial number had been removed.

The kitchen sink found in the house under repair was described as a double, white cast iron sink, the same as the one which had been stolen from the prosecuting witness.

The commode was described as being like the one missing.

In a building in defendant's back yard was found a panel, apparently from some electrical appliance, with holes there-

in; and the metal name plate with the word "Brown," taken from the hot water heater in the house under repair, fit the holes in the panel.

At the scene of the theft were found tire tracks described as having an unusual pattern and matching the tire tracks of a Ford pickup truck used by defendant. Footprints were also found described as having grooves running crosswise. In the building in defendant's back yard was found a pair of boots with rubber soles which had perforations and lines running crosswise similar to the tracks found at the scene of the theft.

The prosecuting witness testified that the lavatory found in the house under repair, while being a white lavatory, was not the one missing from his house.

The defendant testified and by way of explanation contended that the items in question were bought in Rockingham, North Carolina, by one of his employees with money provided by him and that he had a bill of sale for same but had lost it. He produced no one from the place of business in Rockingham for the purpose of showing that the materials had actually been purchased there, and none of his employees took the stand to corroborate his testimony; in fact, he produced no witness other than himself.

Under the circumstances heretofore related, there was no error in denying defendant's motion for a directed verdict of not guilty and submitting the case to the jury.

Defendant also complains that the trial Judge erred in refusing to strike from the indictment the items "sink and commode" in that they were only identified as being like the ones stolen when in fact they were similar to many others in use with no distinguishing features. Were these the only items taken from the building, standing alone, it would have been error to refuse the motion; but when considered in conjunction with the testimony that these items were stolen from the same place and time as the other items

which were specifically identified and all found at the same place, except the lavatory which was never found and was stricken from the indictment, and the admission of defendant that he as the contractor placed these items where found, there was no error in refusing the motion, *State v. Hamilton,* 138 S. C. 164, 136 S. E. 391; *State v. Martin,* 118 S. C. 21, 110 S. E. 78.

Defendant next contends that it was incumbent upon the State to prove the value of the stolen property as being over $20.00. When the seller was on the stand, he was asked the questions:

"Q. Approximately what would those articles run? A. I don't have any idea just what it run.

Q. Would it run less than twenty dollars? A. No, sir.

Mr. Clayton: May it please the Court, we can stipulate they are above twenty dollars.

The Court: All right, sir."

For the foregoing reasons, we are of opinion that all exceptions should be dismissed and the judgment and sentence appealed from affirmed; and it is so ordered.

Affirmed.

OXNER, LEGGE, MOSS and LEWIS, JJ., concur.