1650

The STATE, Respondent v. Daniel H. McCALL, Appellant.

(405 S.E. (2d) 414)

Court of Appeals

*John I. Mauldin,* Greenville and *SC Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Miller W. Shealy, Jr.,* Columbia, and *Sol. Joseph J. Watson,* Greenville, *for respondent.*

Heard Feb. 18, 1991; Decided April 22, 1991.

Rehearing Denied July 2, 1991.

GARDNER, Judge:

Daniel H. McCall (McCall) was charged with and convicted of robbery, kidnapping and murder. The trial judge sentenced him to two concurrent life sentences for murder and kidnapping and ten years for robbery to run consecutively with the life sentences. We affirm as modified.

## ISSUES

The issues of merit are whether the trial judge erred (1) by denying McCall's request for an additional charge in response to the jury's request for a recharge on the issues of murder and the lesser included offense of involuntary manslaughter and (2) in sentencing McCall to life imprisonment for kidnapping when McCall also received a life sentence for murder.

## FACTS

McCall and two accomplices were driving on an interstate in Greenville County headed toward North Carolina when they saw A.R.M. Stroud standing beside his automobile, working on it. McCall and his accomplices stopped to rob Stroud. They offered to help him and when he opened his trunk to get more tools, McCall forced Stroud, who was a 72-year-old man with heart problems, into the trunk of his own car. McCall, following his accomplices, drove Stroud's car off the interstate, down a paved road and then turned onto a dirt road known as the Watson Logging Road. This was an isolated place. There they removed Stroud from the trunk and searched him, taking his money. They then forced Stroud back into the trunk of his car and left him in the car on the dirt road.

Several days later, Stroud's body was found in the trunk of his car. The testimony of record establishes that as a result of his being forced into the trunk and left there, Stroud died of a heart attack. According to the medical testimony of record he was, "literally scared to death."

## I.

The first issue arises from the jury charges on murder and the lesser included offense of involuntary manslaughter. It involves the so call *King* charge, i.e., if the jury has a reasonable doubt as to whether the defendant was guilty of murder or a lesser offense, the doubt must be resolved in favor of the lesser offense. *See State v. King,* 158 S.C. 251, 155 S.E. 409 (1930).

The trial judge submitted the murder charge under the *Mouzon*[1] theory of implied malice, i.e., the killing of another by one with a depraved or malignant heart. He also submitted involuntary manslaughter as a lesser included offense, distinguishing it from *Mouzon* murder by describing it as an unin-

[1] *State v. Mouzon,* 231 S.C. 655, 99 S.E. (2d) 672 (1957).

tentional killing of another with a reckless disregard for the safety of others (the victim). He charged the jury on "reasonable doubt" with respect to both offenses. Finally, the trial judge gave the following charge on reasonable doubt, murder and manslaughter.

> Ladies and gentlemen, if from the evidence in this case you have a reasonable doubt as to whether or not the defendant in this case is guilty as charged in these indictments, it would be your duty to acquit him. If with respect to the charge of murder, you have a reasonable doubt, in that case it would be your duty to resolve that doubt in his favor *and then move on to consider the issue of whether or not he's guilty of involuntary manslaughter.* Should you have a reasonable doubt as to his guilt of that, it would be your duty to acquit him of that. [Emphasis ours.]

After the beginning of deliberations, the jury asked for a "clarification of the specific definitions and differences between involuntary manslaughter and murder." The trial judge repeated the basics of his previous charge on the definition of the crimes. He again explained the difference thusly: "involuntary manslaughter involves a reckless disregard for the safety of others." Murder is a killing with malice and in this case, malice depends on a finding of a "depraved heart or a malignant heart." At that point, McCall for the first time requested a *King* charge on resolving any doubt in favor of involuntary manslaughter. McCall argues the jury's question indicated they were "battling between those two interpretations that are very close." The trial judge refused, ruling "they undoubtedly understood my charge concerning that." McCall made no further arguments or motions on this issue.

There is a nice difference in the *King* charge and the ▮▮ charge made. And our Supreme Court has held that the difference is one of substance. *See State v. Jackson,* — S.C. — , 389 S.E. (2d) 650 (1990). The jury in this case indicated they had a doubt as to whether McCall was guilty of murder or involuntary manslaughter. McCall vigorously argues he was entitled to a *King* charge. The trial judge erred in refusing to make the charge, but we hold it was harmless error. We affirm because the record before us is devoid of evidence supporting a charge of involuntary manslaughter. We

hold that the trial judge erred in instructing the jury that the crime was applicable to the facts of this case. The fact that a trial judge errs in submitting an issue to the jury does not preclude affirmance by this court upon a proper ground sustained by the record. *See State v. Davis,* 278 S.C. 544, 298 S.E. (2d) 778 (1983).

The trial judge in his charge to the jury described involuntary manslaughter simply as the killing of another without malice and with a reckless disregard for his safety. He failed to charge the jury that involuntary manslaughter does not include the killing of another while engaged in the commission of a felony.

The record establishes that McCall was in the process of robbing and kidnapping Stroud when he killed Stroud by locking him in the trunk of his automobile. Both robbery and kidnapping are felonies. The law of involuntary manslaughter does not apply where a person in the commission of a felony unintentionally kills his victim.

Our research fails to reveal an up-to-date definition by our Supreme Court of involuntary manslaughter. Involuntary manslaughter may be described as having its origin in either of two situations. First, involuntary manslaughter may be described as the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm.[2] The second situation may be described as the killing of another without malice and unintentionally but while engaged in the doing of a lawful act with a reckless disregard of the safety of others.[3]

A careful reading of the above definition of involuntary manslaughter negates the applicability of that crime to the facts of this case. First, McCall was involved in the commission of the felonies of robbing and kidnapping. Stroud's death was the direct result of the kidnapping when McCall seized Stroud and locked him in his car. Except in rare situations, a

---

[2] *State v. Barnett,* 218 S.C. 415, 421, 63 S.E. (2d) 57, 58 (1951).

[3] *See* S.C. Code Ann. § 16-3-60 (1976) which modified *Barnett* by statutorily establishing the degree of negligence required in the second situation as a reckless disregard for the safety of others. *See also* 40 Am. Jur. (2d) *Homicide* § 70 (1968), which discloses that the definition herein given is consistent with the law of the land.

person committing an unlawful act is legally responsible for all natural or necessary consequences thereof. One combining and confederating with others to accomplish an illegal purpose is criminally liable for everything done by either him or his confederates which follows incidentally in the execution of a common design as one of the probable and natural consequences, *though not intended as a part of the original design or common plan. State v. Williams,* 189 S.C. 19, 23, 199 S.E. 906, 908 (1938). [Emphasis ours.]

Under the facts of this case, McCall intended to rob and kidnap Stroud; he is charged under the law with the legal responsibility of the consequences of his locking and imprisoning a 72-year-old man in the trunk of an automobile parked on an out-of-the-way logging road. McCall's argument that he did not intend to kill Stroud is untenable in view of the well-established law that a person is responsible for the results of his intentional and criminal acts. For this reason, we affirm McCall's conviction because it clearly appears of record that the law of involuntary manslaughter was not applicable to the facts of this case. The *King* charge was, therefore, inapplicable.

## II.

We vacate the sentence for kidnapping. The kidnapping punishment statute clearly mandates life imprisonment *unless* the defendant is sentenced under the murder statute. S.C. Code Ann. § 16-3-910 (1976) (Emphasis added). Our Supreme Court has summarily vacated life sentences for kidnapping when the defendant received a life sentence under the murder statute. *State v. Perry,* 278 S.C. 490, 299 S.E. (2d) 324 (1983), *cert. denied,* 461 U.S. 908, 103 S. Ct. 1881, 76 L. Ed. (2d) 811 (1983).

## CONCLUSION

For the reasons given, we affirm the convictions of McCall for robbery, kidnapping and murder. We, however, vacate the sentence of kidnapping for the reasons stated. The conviction and sentences are affirmed as modified.

Affirmed as modified.

BELL, J. and LITTLEJOHN, Acting Judge, concur.