478 S.E.2d 260

**The STATE, Respondent,**

v.

**James Neil TUCKER, Appellant.**

**No. 24517.**

Supreme Court of South Carolina.

Heard Sept. 17, 1996.
Decided Nov. 4, 1996.
Rehearing Denied Dec. 5, 1996.

158

Wanda H. Haile, South Carolina Office of Appellate Defense, Columbia, for appellant.

Charles Molony Condon, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, and Wade S. Kolb, Jr., Solicitor, Third Judicial Circuit, Sumter, for respondent.

WALLER, Justice:

Appellant James Neil Tucker appeals his convictions of murder, kidnapping, armed robbery, possession of a weapon during a crime, first degree burglary (two counts), third degree burglary, and larceny. He was sentenced to death for the murder. This appeal consolidates his direct appeal with the mandatory review provisions of S.C.Code Ann. § 16–3–25(C) (1985). We affirm.

## FACTS

On June 25, 1992, Rosa Lee Dolly Oakley ("Victim") was in her yard when Appellant pulled his car into her driveway. He talked to Victim long enough to make sure she was alone, then pulled out a gun and forced her into the house and her

bedroom. He was preparing to tape Victim up when Joe Black rang the doorbell. Black and James Howard (outside in the car) were looking for Victim's husband. Both appellant and Victim went out into the driveway after Black. Victim began screaming, "Don't leave me, he's going to kill me," holding on to Black's arm as he sat in Howard's car. Howard panicked and left. Appellant pulled Victim away from the retreating car, dragged her back into the house, took fourteen dollars from her purse, and shot her twice in the head at close range. He testified he shot her the first time when she tried to grab the gun. As he was leaving, he shot her again to "put her out of her misery."

On the run from police, Appellant broke into the Christian Fellowship Church on June 26–27, 1992, and into Kenneth Parker's mobile home between June 27–29, 1992. Appellant then hitched rides under trucks until he got to Calhoun County, where he killed another person while attempting to get a car and money to escape police looking for him on the Oakley murder. Appellant was tried, convicted, and sentenced to death for this subsequent murder ("Mellon murder") before going on trial for the present offenses. Appellant was caught July 10, 1992 in Maggie Valley, North Carolina and gave a detailed confession to police.

At trial, Appellant was found guilty of murder, first degree burglary, armed robbery, and possession of a weapon during a violent crime for his actions at the Oakley residence. He was found guilty of third degree burglary for the break-in at Christian Fellowship Church. He was found guilty of first degree burglary and larceny for the break-in at Parker's mobile home. He was sentenced to death at a separate proceeding upon a jury's recommendation.

## ISSUES

I. Did the trial court err in qualifying and excusing certain potential jurors?

II. Did the trial court err in refusing to sever the charges for subsequent break-ins from those arising out of the Oakley murder?

III. Did the trial court err in refusing a change of venue motion?

IV. Did the trial court err in admitting certain photographs?

V. Did the solicitor's closing argument deprive Appellant of a fair trial?

VI. Did the trial court err in refusing to instruct the jury on the law of manslaughter?

VII. Did the trial court err in refusing to instruct the jury on the law of accident?

VIII. Did the trial court err in refusing to grant a change of venue or mistrial due to the solicitor's comments to the press?

IX. Did the trial court err in admitting Appellant's prior criminal record?

X. Did the trial court err in refusing to grant a mistrial after testimony was given regarding Appellant's security during trial?

XI. Did the trial court err in submitting the aggravating circumstance of two or more persons being murdered by the defendant pursuant to one act, scheme or course of conduct?

## DISCUSSION

### I. Juror Qualification

#### A. Jurors Qualified

Appellant argues the trial judge erred in qualifying four jurors. We disagree.

Initially, Appellant is procedurally barred from making this argument because at trial he exercised only seven of his ten peremptory strikes. Failure to exhaust all of a defendant's peremptory strikes will preclude appellate review of juror qualification issues. *State v. Hudgins*, 319 S.C. 233, 460 S.E.2d 388 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 821, 133 L.Ed.2d 764 (1996). Furthermore, three of the jurors were not seated.[1] In *Ross v. Oklahoma*, the Supreme Court held that any claim that a jury was not impartial must focus

---

1. These three jurors' names were not among those randomly selected from the qualified jury panel and presented to the parties, i.e. the reason they were not seated is not because peremptory strikes were exercised to exclude them.

on the jurors who ultimately sat at trial. 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). *See also State v. Green,* 301 S.C. 347, 392 S.E.2d 157, *cert. denied,* 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990) (following *Ross*).

In any event, after reviewing the record we find the jurors were properly qualified. *See State v. Davis,* 309 S.C. 326, 422 S.E.2d 133 (1992), *cert. denied,* 508 U.S. 915, 113 S.Ct. 2355, 124 L.Ed.2d 263 (1993) (determination of whether a juror is properly qualified to serve on a death penalty case is a matter within the sound discretion of the trial judge and will not be disturbed on appeal unless wholly unsupported by the record); *State v. Gilbert,* 277 S.C. 53, 283 S.E.2d 179 (1981), *cert. denied,* 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 863 (1982) (court should not examine isolated statements but entire colloquy with juror to determine qualification).

## B. *Jurors Excused*

 Appellant argues the trial judge erred in excusing two jurors for cause. We disagree. Prospective jurors may be excused for cause if their views on capital punishment would prevent or substantially impair the performance of their duties as jurors. *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *State v. Elmore,* 300 S.C. 130, 386 S.E.2d 769 (1989), *cert. denied,* 496 U.S. 931, 110 S.Ct. 2633, 110 L.Ed.2d 652 (1990). Because both jurors definitively and repeatedly stated they could not write a death sentence under any circumstances, we find there was evidence to support the excusal of both jurors. *See Davis,* 309 S.C. at 326, 422 S.E.2d at 133 (determination of whether a juror is properly qualified to serve on a death penalty case is a matter within the sound discretion of the trial judge and will not be disturbed on appeal unless wholly unsupported by the record).

## GUILT PHASE

### II. *Consolidation of Charges*

██ Appellant argues the trial judge erred in denying his motion to sever the charges arising out of his breaking into Christian Fellowship Church and Kenneth Parker's mobile home from the charges arising out of the Oakley murder. We disagree.

A motion for severance is addressed to the trial court and should not be disturbed unless an abuse of discretion is shown. *State v. Anderson,* 318 S.C. 395, 458 S.E.2d 56 (Ct.App.1995). Charges can be joined in the same indictment and tried together where they (1) arise out of a single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no real right of the defendant has been prejudiced. *State v. Tate,* 286 S.C. 462, 334 S.E.2d 289 (Ct.App.1985). *See also State v. Middleton,* 288 S.C. 21, 339 S.E.2d 692 (1986).

Here, Appellant told police that after killing Victim on June 25, 1992, he went into hiding. A day or two afterward, he broke into the Christian Fellowship Church. "The reason I broke into the church is I was trying to find some food. Something to drink, and get cleaned up a little bit." Two women who came to clean the church surprised him there and he ran away. A little bit later, he broke into Kenneth Parker's mobile home. Parker was Appellant's friend. Appellant told police he went to the mobile home to ask Parker for help. When no one was there, however, he broke in to clean up. Appellant took a shower, put on some of Parker's clothes, and hid out there for a while, knowing that police were searching for him. He then left his old clothes there and continued on his way. When apprehended, Appellant was still wearing the clothes stolen from Parker's mobile home. The women in the church identified the clothes left at Parker's as those Appellant was wearing in the church.

We find the requirements for consolidation were met in this case. The crimes arose out of a single chain of circumstances because Appellant committed the subsequent burglaries solely to avoid capture by police for the Oakley crimes. *See Tate,* 286 S.C. at 464, 334 S.E.2d at 290 (single chain of circumstances means a single course of conduct or connected transactions). They would be proved by the same evidence because the evidence of the subsequent break-ins would have been admissible to prove the Oakley crimes as evidence of flight and identity. *See State v. Thompson,* 278 S.C. 1, 292 S.E.2d 581, *cert. denied,* 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (evidence of flight admissible to show guilty knowledge, intent, and that defendant sought to avoid

apprehension); *State v. Byers,* 277 S.C. 176, 284 S.E.2d 360 (1981) (evidence that defendant stole truck to flee scene of prior robbery admissible in robbery trial because it shows his flight to avoid capture). The crimes were of the same general nature as the Oakley crimes, and no right of the defendant was prejudiced. Thus, there was no abuse of discretion in the trial judge's denying the severance motion.

### III. Change of Venue

█ Appellant argues the trial judge erred in denying his motion to change venue because of the publicity the case received. He complains of a series of articles in the Sumter newspaper published from December 5, 1994 to December 10, 1994.[2]

A motion to change venue is addressed to the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion. *State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990). Moreover, exposure to pretrial publicity does not automatically disqualify a prospective juror. "When jurors have been exposed to such publicity, a denial of a change of venue is not error where jurors are found to have the ability to lay aside any impressions or opinions and render a verdict based on the evidence presented at trial." *Id.* at 502, 388 S.E.2d at 821. Put another way, "Where the trial judge bases his ruling on adequate voir dire examination of the jurors, his conclusion that the objectivity of the jury panel has not been polluted with outside influence will not be disturbed absent extraordinary circumstances." *State v. Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982), *cert. denied,* 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed.2d 367 (1983). The defendant bears the burden of showing actual prejudice. *Caldwell,* 300 S.C. at 502, 388 S.E.2d at 821. *See also State v. South,* 285 S.C. 529, 331 S.E.2d 775 (1985), *cert. denied,* 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed.2d 178 (1985) (no abuse of discretion where judge carefully screened potential jurors before trial).

---

2. The first time the record reflects a motion for change of venue is in the middle of jury selection on December 6, 1994. While defense counsel stated it as a renewal of the motion, there is nothing in the record to show when or on what basis the original motion was made.

The record reflects that the judge took appropriate safeguards to ensure jurors would not be exposed to the news articles. Jury selection began on December 5, 1994, and on that morning the judge specifically told all potential jurors not to read or listen to anything about the trial. He asked each potential juror during individual questioning whether they had read any of the news articles. The jurors who actually sat on the jury (as well as all who were qualified to sit) stated they had not read the articles.[3]

Appellant argues this indicia of impartiality should be disregarded because the jurors "were actually saturated with incessant pretrial publicity." The record contains none of these pretrial news accounts, nor was there any mention in the record of any other than those printed from December 5–10, 1994. It is the appellant's burden to establish the record. *See DeLee v. Knight,* 266 S.C. 103, 221 S.E.2d 844 (1975), *cert. denied,* 426 U.S. 939, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976).

While Appellant correctly points out that many potential jurors had heard about the case prior to trial, this information alone is clearly not sufficient to render his trial prejudicial. "The relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847, 856 (1984). "In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756 (1961). *See also State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990) (no abuse of discretion where eleven of the seated jurors and two alternates acknowledged awareness of media coverage but stated they could be impartial and decide the case based on evidence presented). Of the qualified jurors, only four stated they had an opinion of Appellant's guilt. All stated they could

---

3. The Sumter newspaper comes out in the afternoon, so the jurors had been informed not to read anything even before the December 5 edition came out.

put the opinions aside and base their verdict solely on the evidence. Furthermore, none of these four actually sat on the jury. Of the jurors who actually sat, nine had heard about the case but stated they had no opinion as to Appellant's guilt.

For these reasons, we find the trial judge did not abuse his discretion in denying Appellant's motion to change venue.

## IV. Photographs

Appellant argues the trial judge erred in admitting certain photographs at both the guilt and sentencing phases because they were more prejudicial than probative. We disagree.

 The relevance, materiality and admissibility of photographs are matters within the sound discretion of the trial court. If the photographs serve to corroborate testimony, it is not an abuse of discretion to admit them. *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349, *cert. denied,* —— U.S. ——, 116 S.Ct. 2566, 135 L.Ed.2d 1083 (1996). A photograph should be excluded only if it is calculated to arouse the jury's sympathy or prejudice or is irrelevant or unnecessary to substantiate facts. *State v. Todd,* 290 S.C. 212, 349 S.E.2d 339 (1986).

 Of the exhibits introduced at the guilt phase,[4] only one, a black and white photograph, depicted Victim's body as it was left at the house. It was admitted to show the placement of the victim, the crime scene as a whole, and to contradict Appellant's assertion that the killing was accidental or the result of a faulty weapon. It was taken from the farthest point in the room. The rest of the photographs showed different rooms with barely distinguishable blood spatterings on the carpet (admitted to corroborate testimony that Appellant dragged Victim through the house), Victim's keys by the back door (admitted to show where Victim left them when she went out the back door), bullet casings (admitted to show where Appellant was in Victim's bedroom when he shot her), and Victim's hand (admitted to show she was being taped up). There was no abuse of discretion in their admission.

---

4. Several of the exhibits Appellant is appealing were not in the record and therefore have not been addressed.

■ Two photographs introduced at the sentencing phase depicted Victim's body, one in color and one in black and white. We find these were not unduly prejudicial. "Photographs of the victim's body are admissible in the sentencing phase of a capital trial to show the circumstances of the crime and the character of the defendant." *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996). The photographs were admitted to depict the shots to Victim's head and that they were fired at close range at the crime scene. The color photograph was introduced to show the difference between the blood Victim coughed up and the blood from her wound.

■ Finally, the other photographs were admitted as victim impact evidence to show something of Victim's life. They showed Victim at different places on vacation, Christmas decorations in Victim's yard, Victim holding her godchild, and Victim fishing. Victim impact evidence is clearly admissible because it shows the victim's uniqueness as an individual so long as it does not render the trial fundamentally unfair. *State v. Rocheville,* 310 S.C. 20, 425 S.E.2d 32, *cert. denied,* 508 U.S. 978, 113 S.Ct. 2978, 125 L.Ed.2d 675 (1993); *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992). We find nothing in these photographs that would have rendered Appellant's trial unfair.

## V. *Solicitor's Closing Argument*

■ Appellant argues the trial court erred in refusing to grant a mistrial because the solicitor's closing argument denied him a fair trial.[5] Specifically, the solicitor stated:

And so they go back and finds that nobody else is there, just her, just like he had thought in his plan and picked out the right victim, a nice looking house, woman alone, nobody else home, then he starts working her back to where he had seen the tape because he was going to tape her up to even make sure that she was more at his whim, whatever he wanted to do.

---

5. We find Appellant's argument that in making the remarks the solicitor fabricated an additional aggravating circumstance to be without merit because no such circumstance was submitted at the penalty phase.

Now, you may think about it there. *He may have had the intent to rape her before he killed her and left, and if it were not for Joe Black and them there and he had to get out of there quick, maybe that's what would have happened and the reason he began to take [sic] her up.*

(emphasis added). It is uncontested that there was no evidence in the record that Appellant raped Victim.

Initially, Appellant has waived this issue because he refused the trial judge's offer of a curative instruction. *State v. Watts,* 321 S.C. 158, 467 S.E.2d 272 (Ct.App.1996) (defendant waives objection if curative instruction is refused). In any event, the solicitor's remarks, though improper, did not deprive Appellant of a fair trial.

While the solicitor must confine his arguments to the evidence in the record and its reasonable inferences, *see State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990), failure to do so will not automatically result in reversal. *State v. Edgeworth,* 239 S.C. 10, 121 S.E.2d 248 (1961). A new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *State v. Coleman,* 301 S.C. 57, 389 S.E.2d 659 (1990). *See also Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The burden of proof is on Appellant to show prejudice. *State v. Durden,* 264 S.C. 86, 212 S.E.2d 587 (1975).

Here, the comment was one isolated event in the entire argument. *See State v. Chaffee,* 285 S.C. 21, 328 S.E.2d 464 (1984) ("momentary lapse of good taste will rarely constitute prejudicial error"), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1878, 85 L.Ed.2d 170 (1985), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991). The trial judge charged the jury that counsel's arguments had no evidentiary value and could not be used as that basis to reach a verdict. Furthermore, there was such overwhelming evidence of Appellant's guilt, no prejudice could possibly have resulted. We find no error. *See State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989) (decision of whether or not to grant a mistrial is discretionary with trial judge and should not be disturbed absent an abuse of that discretion).

*VI. Manslaughter*

Appellant argues the trial judge erred in refusing to charge involuntary and voluntary manslaughter to the jury. We disagree.

*A. Involuntary Manslaughter*

■■■ In his confession Appellant admitted killing Victim. However, he claims he did not intend to shoot her but was "merely negligent in the use of a dangerous instrumentality." Appellant told police the following occurred after he brought Victim back into the house:

That's where I took her to, to the bedroom. Got the money out of her purse in the bedroom. At this time, I had pulled the gun back out from my belt.

When I set her purse back down, I had the money in my left hand. The gun in my right hand. It was pointed at her. She tried to grab the gun and I shot her. I don't know—I can't say at this time whether I intentionally shot her or if it just happened. I don't know.

Earlier, before making this statement, Appellant had told police he had decided to break into someone's home when he did not think anyone was there. However, when he broke into the house, a woman was there, there was a scuffle and she was killed.

■■■■■ Involuntary manslaughter is defined as either (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) the killing of another without malice and unintentionally but while engaged in the doing of a lawful act with a reckless disregard of the safety of others. *State v. Pickens,* 320 S.C. 528, 466 S.E.2d 364 (1996); *Bozeman v. State,* 307 S.C. 172, 414 S.E.2d 144 (1992). The trial court should refuse to charge on a lesser-included offense where there is no evidence that the defendant committed the lesser rather than the greater offense. *State v. Smith,* 315 S.C. 547, 446 S.E.2d 411 (1994). Because Appellant was engaged in committing burglary, kidnapping and armed robbery at the time the shooting occurred (all felonies), he was not entitled to have this charge. *State v. Young,* 319 S.C. 33,

459 S.E.2d 84 (1995), *cert. denied,* ⸺ U.S. ⸺, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996); *State v. McCall,* 304 S.C. 465, 405 S.E.2d 414 (Ct.App.1991).

Even if the first shooting was unintentional, the same cannot be said of the second. Appellant stated, "I shot her again before I left just because—as stupid as it sounds—I thought she was suffering. So I put her out of her misery. That's basically what the second shot was for." [6] It is difficult to imagine a more intentional shooting. *See Thompson,* 278 S.C. at 7, 292 S.E.2d at 585 (involuntary manslaughter charge improper where there was testimony that first shot was accidental but second shot was meant to insure victim's death).

## B. Voluntary Manslaughter

Appellant also argues he was entitled to a charge on voluntary manslaughter because he was "probably provoked by Mrs. Oakley's attempts to grab the gun." Additionally, he argues he was under severe stress from financial pressure.

Voluntary manslaughter is the unlawful killing of another in sudden heat of passion upon sufficient legal provocation. *Bell v. State,* 321 S.C. 238, 467 S.E.2d 926 (1996). Here, there is no sufficient legal provocation. If Victim did try to grab the gun, she was only trying to defend herself. *See State v. Tyson,* 283 S.C. 375, 323 S.E.2d 770 (1984), *cert. denied,* 471 U.S. 1006, 105 S.Ct. 1873, 85 L.Ed.2d 165 (1985) (evidence that victim was defending himself from armed robbery and got killed in the process not sufficient legal provocation to warrant voluntary manslaughter charge). Furthermore, Appellant's financial problems, even if they did lead him to commit crimes, cannot serve as sufficient legal provocation to reduce a murder charge. The provocation must come from some act of or related to the victim in order to constitute sufficient legal provocation. *See State v. Franklin,* 310 S.C. 122, 125, 425 S.E.2d 758, (Ct.App.1993) ("The provocation *of the deceased* must be such as naturally and instantly produces in the mind of a person ordinarily constituted the highest

---

6. The pathologist testified Victim died of two gunshot wounds to the head; he did not state whether the first shot alone would have killed her. The fact that Appellant thought she was suffering, however, at the very least suggests Victim was still alive when he fired the second shot.

degree of exasperation, rage, anger, sudden resentment, or terror, rendering the mind incapable of cool reflection") (emphasis added); *State v. Plemmons*, 286 S.C. 78, 332 S.E.2d 765 (1985) (need of money does not constitute legal provocation). Finally, there was no provocation for Appellant's firing the second shot at all.

### VII. Law of Accident

■ Appellant argues the trial judge should have charged the law of accident to the jury. We disagree.

■ A homicide will be excusable on the ground of accident when (1) the killing was unintentional, (2) the defendant was acting lawfully, and (3) due care was exercised in the handling of the weapon. *State v. Goodson*, 312 S.C. 278, 440 S.E.2d 370 (1994). Here, even if there was some evidence the first shot was unintentional, Appellant was acting unlawfully. *See Arnette v. State*, 306 S.C. 556, 413 S.E.2d 803 (1992). Additionally, the second shot, as discussed above, was intentional in any event.

### SENTENCING PHASE

### VIII. Solicitor's Comments to Media

■ Appellant argues the trial judge erred in refusing to grant a change of venue or mistrial because of two comments the solicitor made to the media during the trial.

First, the solicitor stated in a newspaper article (published December 6, 1994) he was shocked by the judge's decision to keep Victim's husband from viewing jury selection. The judge properly denied Appellant's motion for the reasons discussed in Issue III above.

Second, on December 7, 1994 the trial judge issued a gag order prohibiting the attorneys from discussing the case with the media. However, after the jury returned the guilty verdict, the solicitor received permission from the judge to comment to the media. The solicitor told the media Appellant strongly deserved the death penalty. Appellant argues this comment was prejudicial and deprived him of a fair trial.

The decision of whether or not to grant a mistrial is discretionary with the judge and should not be disturbed

absent an abuse of that discretion. *State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989). Here, the jury was sequestered when this article was published. Appellant conceded the jurors could not have read the article. Furthermore, the trial judge stated he would find out if there had been any violations of the sequestration. Therefore, no prejudice could have occurred. The cases cited by Appellant are distinguishable. *See, e.g., State v. Salters,* 273 S.C. 501, 257 S.E.2d 502 (1979) (error in refusing to poll *unsequestered* jury after a prejudicial news article was published during the trial).

## IX. *Prior Criminal Record*

■ Appellant argues the trial judge erred in admitting his prior convictions of rape and escape. He argues the only crimes admissible in sentencing are those having some relevance to the specific charges against the defendant. We find this argument without merit.

■ "What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *State v. Skipper,* 285 S.C. 42, 328 S.E.2d 58 (1985), *reversed on other grounds,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (internal quotation omitted). The jury's attention must be focused on both the specific circumstances of the crime and the characteristics of the person who committed it. *State v. Stewart,* 283 S.C. 104, 320 S.E.2d 447 (1984). Contrary to Appellant's position, cases in South Carolina and around the country have consistently found a defendant's prior criminal record to be highly relevant in sentencing; any limitations have been directed to admitting only felonies or violent crimes. *See, e.g., Stewart,* 283 S.C. at 108, 320 S.E.2d at 450 ("[I]nformation concerning prior criminal convictions shall be admissible as additional evidence during the sentencing or representing [sic] phase of a capital trial") (internal quotations omitted); *State v. Plath,* 281 S.C. 1, 8, 313 S.E.2d 619, 623 (1984) ("Information as to a defendant's record of previous criminal convictions has always been deemed relevant to the process of imposing sentence"). *See also Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944, 961 (1976) ("[W]e believe that in capital cases ... the Eighth Amendment ... requires consideration of the character and *record* of the individual offender

... *as a constitutionally indispensable part of the process of inflicting the penalty of death*") (emphasis added); *People v. Hudson,* 157 Ill.2d 401, 193 Ill.Dec. 128, 626 N.E.2d 161 (1993); *State v. Jackson,* 608 So.2d 949, 954 (La.1992) ("Evidence of convictions of serious *unrelated* crimes is extremely probative of and relevant to the character and propensities of the defendant and may be useful for the jury to evaluate in performing its awesome task of deciding whether or not to recommend execution") (emphasis added); *Hardison v. State,* 104 Nev. 530, 763 P.2d 52 (1988) (conviction for gross misdemeanor of conspiracy to commit grant larceny properly admitted at sentencing where defendant convicted of murder); *People v. Saathoff,* 790 P.2d 804, 806 (Colo.1990) ("[I]t is well settled that there is no *constitutional* barrier to the admission of a defendant's prior felony convictions during a capital sentencing proceeding").

 Here, the prior record showed Appellant's extremely violent nature and future dangerousness. The evidence of Appellant's escapes was relevant to his adaptability to prison and his ability to be rehabilitated. The defendant's future danger to society is a legitimate interest at sentencing. *Dawson v. Delaware,* 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). Another legitimate interest is the defendant's prospect for rehabilitation and restoration to a useful place in society. *People v. Trimble,* 220 Ill.App.3d 338, 162 Ill.Dec. 790, 580 N.E.2d 1209 (1991), *appeal denied,* 148 Ill.2d 652, 183 Ill.Dec. 30, 610 N.E.2d 1274 (1993). *See also State v. Woomer,* 278 S.C. 468, 299 S.E.2d 317 (1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed.2d 1413 (1983) (evidence of escape properly admitted in sentencing phase). The trial judge charged the jury that this evidence could only be used regarding Appellant's characteristics and they could not consider it as proof of any statutory aggravating circumstances. Thus, we find no error in the admission of these prior convictions.

### X. *Security Provisions in Courtroom*

 Appellant argues the trial judge erred in refusing to grant a mistrial when a police officer testified during the sentencing phase about security posted in the courtroom during trial. This issue is unpreserved because Appellant did not make a contemporaneous objection; the objection was

made at the close of direct examination. The grounds for the objection were not made until several witnesses later, during the routine court recess. *State v. Black,* 319 S.C. 515, 462 S.E.2d 311 (Ct.App.1995) (contemporaneous objection required to preserve error for review); *State v. Moultrie,* 316 S.C. 547, 451 S.E.2d 34, 39 (Ct.App.1994) (failure to contemporaneously object to introduction of evidence "cannot later be bootstrapped by a motion for a mistrial.") (citations omitted).

In any event, this testimony did not prejudice Appellant. When a courtroom arrangement is challenged as inherently prejudicial, the question is whether there is "an unacceptable risk ... of impermissible factors coming into play." *Holbrook v. Flynn,* 475 U.S. 560, 570, 106 S.Ct. 1340, 1346–47, 89 L.Ed.2d 525, 535 (1986). Appellant argues this testimony made it seem he was "more dangerous than ever imagined" and impinged on his right to a trial based on the evidence and not on "suspicions regarding continued custody." [7] However, there had already been so much testimony about Appellant's dangerousness (his escapes from prison, hiding keys and razor blades in his cell, attacking prison guards) and violent nature (prior criminal record including rapes, burglaries and murder), as well as testimony elicited from the defense regarding the high security Appellant was under, we fail to see how this testimony prejudiced him. Furthermore, because the defense brought out the information that Appellant was on death row for another murder, in addition to the fact that Appellant had already been found guilty of the current charges (this testimony occurred during sentencing), the jury could have had no suspicion about Appellant's continued custody; it was a certainty. Therefore, the trial judge did not abuse his discretion in refusing to grant a mistrial. *See State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989) (decision of whether or not to grant a mistrial is discretionary with trial judge and should not be disturbed absent an abuse of that discretion).

## XI. *Aggravating Circumstance*

Appellant argues the trial judge improperly allowed the State to submit the statutory aggravating circumstance

---

7. He cites *Holbrook* and *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), in support of this last argument. Both cases are factually and legally distinguishable from this case.

that two or more persons were murdered by the defendant by one act or pursuant to one scheme or course of conduct. S.C.Code Ann. § 16–3–20(C)(a)(9) (Supp.1995). We disagree.

The state submitted evidence that on July 2, 1992, Appellant broke into Shannon Mellon's home, stole personal items, brutally killed her and hid her body in the woods, and stole her car. The trial judge held the evidence was enough to submit the above statutory aggravating circumstance to the jury.

Any error in the submission of this aggravating circumstance is harmless. The jury found three statutory aggravating circumstances. The failure of one aggravating circumstance "does not so taint the proceedings as to require reversal where there remains a valid aggravating circumstance upon which the sentence of death is based." *State v. Elkins,* 312 S.C. 541, 545, 436 S.E.2d 178, 180 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1634, 128 L.Ed.2d 357 (1994); *State v. Plath,* 281 S.C. 1, 19, 313 S.E.2d 619, 629 (1984). Furthermore, the jury did not find this as one of the three statutory aggravating circumstances. The statutory aggravating circumstances they found were that the murder was committed while in the commission of kidnapping, burglary and robbery. S.C.Ann. § 16–3–20(C)(a)(1)(b), -(c), -d (Supp.1995). Therefore, we find Appellant's argument to be without merit.[8]

*Review under S.C.Code Ann. § 16–3–25(C) (1985)*

■ We find the sentence imposed proportionate to that in similar cases and is not arbitrary, excessive nor disproportionate to the crime in this case. We also find the evidence supports the finding of aggravating circumstances. *See State v. Whipple,* —— S.C. ——, 476 S.E.2d 683 (1996); *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349, *cert. denied,* —— U.S. ——, 116 S.Ct. 2566, 135 L.Ed.2d 1083 (1996); *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996).

---

8. At trial, Appellant conceded the evidence concerning the Mellon murder would have been admissible as non-statutory aggravation evidence to show his character. His only contention on appeal is the submission to the jury of the statutory aggravating charge. While Appellant argues he was prejudiced by the jury hearing he was convicted and sentenced to death for the Mellon murder, he is the one who elicited this information at trial.

## CONCLUSION

For the foregoing reasons, Appellant's convictions and death sentence are AFFIRMED.

TOAL, Acting C.J., MOORE, BURNETT, JJ., and Donald W. Beatty, Acting Associate Justice, concur.